No. 364.—E. S. OLIVER v. B. M. JOHNSON.

An agent who has transcended his authority in the collection and investment of the proceeds of notes is not liable therefor, if the principal, on being advised of the collection and investment by the agent himself, fails to notify him promptly that he repudiates his acts.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee*, J. *Duncan* and *Moncure*, for plaintiff and appellant; *Land* and *Taylor*, for defendant and appellee.

TALIAFERRO, J. The plaintiff sues the defendant to recover from him the amount of two promissory notes, one for $200, the other for $750, with ten per cent. interest on each, alleging that, in November, 1860, he forwarded to the defendant, living in Shreveport, these two notes for collection—the makers of the notes being residents of Jefferson, in Texas. That the notes were received by Johnson, who is a private banker and collecting agent, but has entirely failed to account to the petitioner for the notes, or for any part of the same.

The defendant in his answer admits that, in the latter part of the

year 1860, he received the notes in question for collection; that he sent them to a local collector in Jefferson, Texas, for collection; that repeated efforts were made by him to collect the notes, without success; that he caused the notes to be duly protested at maturity; that, when informed by the collector at Jefferson of his inability to collect the money on the notes, the defendant caused them to be placed by his agent in the hands of an attorney of good standing, to be sued upon, the said attorney undertaking to collect or account for the said notes. The defendant contends that, having used due diligence to collect the notes, and having turned them over to a respectable attorney for suit, his own responsibility as agent ceased, the attorney at law being responsible.

There was judgment for the defendant, and the plaintiff has appealed.

The difficulty between the parties in this case seems to be that the attorney at law collected the notes in confederate treasury notes. The defendant Johnson wrote under date of November 3, 1865, as follows to the plaintiff:

"*Dear Sir*—Yours of 25th ult. received and contents noted. When I received the notes mentioned, I found it necessary to place them in the hands of an attorney at Jefferson for collection. The war came on and stopped everything. In 1863 I received advices from my attorney that the party offered to pay confederate money, and stated all his clients were taking it, and advised me to pursue the same course, which I did, and invested the amount in interest notes, which I have on hand now.

"Very. Respectfully, B. M. JOHNSON."

Nearly five years intervened between the date of this letter and the filing of this suit against Johnson to compel him to account.

The plaintiff, in his own testimony, says: "When I received the information from Johnson that he had collected these notes in confederate money and reinvested them in confederate interest-bearing bonds, and that he still had them on hand, I did not consider it necessary to write him that I repudiated the acts of his attorney in Jefferson, and therefore did not do so, as I considered him responsible to me for the acts of his agent, and that he had just as well have said that his agent had stolen the notes, or that he had cast the proceeds into the Mississippi river."

It is a well-settled principle of agency, that the acts of one or the other party, when disclosed to his correlative, should be promptly avowed or disavowed. In the case of Ward *v.* Warfield, 3 An. 471, this court, in relation to the duties and responsibilities of agents toward their principals, said: "If the agent unnecessarily exceed his

commission or risk his principal's effects without authority, he renders himself responsible to the principal. But while this general doctrine may be considered as unquestionable, there are other principles which are equally well settled in the law of agency. Subsequent assent, as between principal and agent, is equivalent to a previous authority; and hence where an agent has committed a breach of orders, and the principal, with full knowledge of all the consequences, adopts his acts, even for a moment, he will be bound by them, and the agent will be discharged. Nor is it necessary that such a spirit should be express. It may be inferred from the conduct of the principal." C. C. 1811; 18 La. 517; 7 N. S. 143; 2 Rob. 1; 11 La. 286.

In Ball v. Bender, 22 An. 496—a case similar in its character to the one under consideration—Ainsley, as agent of Bender, had, without express authority, sold cotton of his principal for confederate money. When he heard of the sale Bender said he would rather have heard of his burning the cotton than selling it for confederate money, but did not promptly repudiate the act. In a suit by Ball against Ainsley and Bender, to enforce the contract Ainsley had entered into with Ball, the court on a rehearing on the reconventional demand of the defendant gave judgment against him on the ground that "it was the duty of Bender to notify the plaintiff Ball that he repudiated the act of Ainsley as unauthorized so soon as he was informed of the fact, even if Ainsley had been unauthorized to sell. This he failed to do."

We think the evidence in the case before the court shows a neglect on the part of the plaintiff to disavow and refuse to ratify the unauthorized act of his agent, when informed of it by the agent himself, that will debar him from recovery.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.