The opinion of the court was delivered by
Blanchard, J.
The Southern Athletic Club owned certain squares of ground in the City of New Orleans. It instructed its president to dispose of the same by sale for $12,000 — $6,000 cash, balance payable in six months’ time. Ilis efforts to sell resulted in the execution of an act of sale of the property -to the Home Investment Company, Limited, for $12,000, represented by two notes, each for $6,000, drawn to the order of the purchaser and by it endorsed, payable at six and twelve months, with eight per cent, interest from their date, and secured by mortgage and vendor’s lien on the property sold.
Mrs. Selima Boche immediately bought the twelve months note, paying therefor $6,000, and the same passed into her possession.
This $6,000, together with the six months’ note, was handed by the notary to the president of the Athletic Club, who, in turn, delivered same to the Club, with a report of the transaction. It seems, however, the Club was not appraised at that time that the sale was an all-credit one — that there was another note out besides the one, due at six months, delivered to it.
The Club pledged the note and borrowed $4,500 upon it. This money, and the $6,000 in cash it received, it used in settlement of its debts.
When the six months note fell due, the maker could not pay it. The Club’s president at that time, successor to the one who had effected the sale, was informed by the maker of the existence of the other note secured by the same mortgage. He examined the act of sale and found this was so. He reported the situation to the Club’s Board of Directors. This was the first information given the Club of the second outstanding note.
The Club did not repudiate the sale and demand the return of the property, making tender of the money and note it had received. On *1289 the contrary, it agreed to receive payment -of interest due upon the note and to extend the latter. This was done.
Again it fell due and was not paid, and a second time interest was collected on it by the Club and the note again extended. These payments of interest were made by the Home Investment Company and the extension granted to it.
When the Company found it could not meet the note, it offered through its officials-to cancel the sale and restore the property. This offer was made to the Club’s president. It was not accepted. Instead, the' Club accepted payment of the interest due -on the note it held and extended the same. It did this with full knowledge -of the terms of the act of sale.
When the twelve months note held by Mrs. Poche matured, it was not paid.
Whereupon, she proceeded via exeeutiva to foreclose the mortgage. The property was seized, advertised for sale and sold -at public outcry, without benefit of -appraisement in accordance with the terms of the mortgage.
It was adjudicated to Mrs. Poche, as the highest bidder, for the sum -of $3,000. But before final act of sale conveying the property to her could be executed by the sheriff, the Southern Athletic, Club appeared in the case by third opposition and arrested further proceedings by injunction.
In its petition the Club sets up that the act of sale made by its president in March, 1896, to the Home Investment Company, Limited, was null and void, because its president exceeded ids authority in the making of the same, and his act was thus ultra vires and not binding upon -it.
The particular in which it is represented the president exceeded his authority was in the matter of the terms of the sale; that whereas he had been authorized to sell the property for $12,000, one-half cash, the remainder on six months’ time, he had sold it for $12,000 on terms of six and twelve months, represented by two notes of $6,000 each.
It is averred that the actual terms of the sale were not known to the Club, nor communicated to'it; that, on the contrary, the information it had received was that the sale had been made for $6,000 cash and one note of $6,000 due at six months secured by mortgage and vendor’s lien.
*1290 It is set forth that Mrs. Poche knew, at the time of the sale, its terms were not in accord with che instructions given the president of the Club, and it is charged that she, herself, was in truth and fact, the true purchaser of the property, and that the Home Investment Company was merely an interposed party. ■
It is alleged that a sale of the property in accordance with the terms which the Club had authorized would have been an advantageous one to the Club, but that the sale actually consummated causes the Club great loss and damage.
This results from the circumstance that the Club is made to appear as transferror to Mrs. Poche, for value before maturity, of one of the notes, and thus becomes postponed to her in right of payment out of the proceeds of the property.
It is further set up that the time at which the property was forced upon the market meant its sacrifice, and the whole proceeding was, in effect, a scheme concocted between Mrs. Poche and the Home Investment Company to practically confiscate the property, to the great loss of the Olub, but to the profit and advantage of herself and the Investment Company.
The prayer of the petition is that the sheriff be restrained from making title to Mrs. Poche, that the sale of March 27, 1896, to the Home Investment Company be annulled and that the ownership of the property in question be decreed to be in the. Southern Athletic Club.
To this petition Mrs. Poche tendered an exception of no cause of action, and as a further exception pleaded estoppel in this, to-wit: That the plaintiff (the Athletic Club) has held since March, 1896, continuously in its possession as owner thereof, one of the notes given for the purchase price of the property; that when the note matured it accepted payment of interest and renewed same; that when it matured a second time it again accepted payment of interest and again renewed the note; and that when these successive renewals were granted, the Club was in full information of the facts as to the terms of the sale.
The Home Investment Company pleaded, as peremptory exception of no cause of action shown, that plaintiff does not allege it has returned the price of the sale, or offered so to do, but, on the contrary, *1291 retains the purchase price, and that until the Club shall have alleged such return or tender of the price, none of the issues raised in its petition of third opposition can be enquired into.
The trial court ordered the exceptions referred to the merits, and, later, answers were filed, Mrs. Poche likewise pleading want of tender of the purchase price.
Judgment was adverse to the third opponent and this appeal followed.
This judgment was correct and must be affirmed. Piad the evidence established that Mrs. Poche was the real purchaser of the Club property at the sale consummated in March, 1896, a different conclusion might have been reached.
Rut it is, we think, satisfactorily showm she was not only not the purchaser, but that she had nothing to do wdth the sale -and purchase beyond supplying the money to take up the second of the two notes. This she did merely as an investment. She took the long term note because it was the better of the two as an investment.
Her son, Joseph Poche, who figured as the party who negotiated the sale between the Athletic Club and the Investment Company, was not her agent and did not act for her.
The petition of third opposition' is really a suit in revendioation. Before bringing the suit the plaintiff did not return the price of the sale which it had received. Neither did it offer to do so. Nor has it done so since.
The proposition is well settled that a-vendor can not maintain a suit in revendioation without having first tendered the return of the price. líe can not retain the price and claim the restoration of the property which was sold. A party demanding the rescission of a contract must return or offer to return the consideration received by -him.
George vs. Knox, 23 La. Ann. 355; Heirs of Castle vs. Floyd, 38 La. Ann. 583; Weldon vs. City Bank, 2 R. 180; Latham vs. Hickey, 21 La. Ann. 426; Lee vs. Taylor, 21 La. Ann. 514; Bend. vs. Cash, 32 La. Ann. 121; Davidson vs. Davidson, 28 La. Ann. 269; Dupleix vs. Dupleix, 26 La. Ann. 218.
“This right of withdrawal or rescission * * * is predicated upon an obligation upon the rescinding party to restore what he has *1292 received under the ultra vires contract, and to put tbe other party in statu quo, as nearly as may be.”
Thompson’s Law of Corporations, Vol. 5, §6003.
But, further, when the Athletic Club, after the full knowledge of the facts of the sale having been brought home to it, agreed to receive payment of interest on the note it held and extend that note, it ratified the sale as made. C. O. 2272; Bonneau vs. Poydras, 2. R. 2.
Thereafter it was estopped to seek avoidance of the sale because its president, in the terms thereof, exceeded his authority.
Thompson’s law of Cor., Vol. 14, §§5298, 5299, 5300, 5301, 5303, 5304, 5313.
If the Club desired or intended to repudiate the sale of its property as thus made, it should have announced its purpose so to do and taken action to that end within a reasonable time after the facts of the case were made known to its Board of Directors.
See 35 La. Ann. 1161 ; 24 La. Ann. 460; 18 La. Ann. 517; 36 La. Ann. 621; 16 La. 51; 11 La. 286.
It is, therefore, ordered and decreed that the judgment appealed from be affirmed at the costs of appellant.