### No. 1790
### Second Circuit Appeal

**T. L. NESBIT v. W. ALBERT GIVENS GILBERT STATE BANK AND MOSE LANIER, Intervenors.**

---

(June 6, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Landlord and Tenant —Par. 97.**

Where the lessee virtually **placed property** in the hands of the landlord **in such** a way as to guarantee that the proceeds of the sale thereof would go to him for the payment of his rent, a provisional seizure was not justified under Code of Practice, Art. 287, even though the rent was due and unpaid. The landlord had no reason to believe that the defendant lessee intended to remove any of the property from the premises in order to defeat his rights as lessor.

2. **Louisiana Digest—Landlord and Tenant —Par. 102.**

Under Code of Practice, Art. 375, the defendant in a provisional seizure may reconvene for damages for wrongful issuance of the writ.

3. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial judge on questions of fact, not being manifestly erroneous, is affirmed.

Appeal from Eighth Judicial District Court of Louisiana, Parish of Franklin, Hon. S. R. Holstein, Judge.

This is a suit, coupled with a provisional seizure for rent on land and wages as a laborer. Defendant reconvened. The Gilbert State Bank and Mose Lanier intervened.

There was judgment for plaintiff and for intervenor.

There was also judgment in favor of defendant on the reconventional demand.

Plaintiff appealed.

Judgment affirmed.

Berry & Berry, of Winnsboro, attorneys for plaintiff, appellant.

W. H. Thompson, of Winnsboro, attorney for defendant, appellee.

ODOM, J. The plaintiff brings this suit to recover the sum of $575.00 for rent on land due for the year 1920 and also the sum of $400.00 due him for wages as a laborer for the same year.

The petition of the plaintiff alleges that the lessee has removed a portion of the product of the farm for the year 1920 and a portion of the farm implements therefrom and that he fears and believes that his lien and privilege on the property will be lost. He asked for and obtained a writ of provisional seizure, under which there was seized a lot of hay, corn, sugar-cane and sweet-potatoes, all in the field, not harvested; and also one tractor, one hay press, and some other farm implements.

This seizure was made on November 3, 1920.

The defendant answered admitting the debt sued on, but denying that he was about to remove any of the property from the leased premises, or that he intended at any time to remove any portion therof to the prejudice of plaintiff's rights.

He set up that he had produced a crop of sweet-potatoes, sugar-cane, hay, corn, etc., on the property for the year and that he had an agreement with the plaintiff to the effect that he would ship the potatoes to the market and give the plaintiff the proceeds of the sale thereof, and that in good faith he had attempted to dig the potatoes and market them, and that without any cause or reason whatsoever plaintiff procured the issuance of the writ of provisional seizure and had the property seized.

He alleged that the act of the plaintiff in procuring the issuance of the writ of attachment was malicious and that he had been damaged in the sum of $1,320.00, for which amount he reconvened and asked for judgment.

The Gilbert State Bank intervened in the suit, claiming a privilege on the tractor seized by the sheriff and asked that the tractor be appraised and sold separately from the other property and that out of the proceeds of the sale thereof it be paid by preference and priority over all other creditors. It alleged that it had furnished the money with which to buy the tractor and that its debt was secured by a chattel mortgage thereon.

There was also an intervention by one Mose Lanier claiming a vendor's privilege for the sum of $150.00 on a hay press which he had sold to the defendant Givens and which was seized with other property under the plaintiff's writ. He asked that this press be appraised and sold separately from the other property and that out of the proceeds of its sale he be paid by preference over all other creditors.

Defendant Givens answered both of these oppositions, admitting practically all of the allegations of the third opponents.

On the trial of the case there was judgment rendered in favor of plaintiff, Nesbit,

the lessor, for the full amount claimed by him, but dissolving the writ of provisional seizure, and judgment in favor of the Gilbert State Bank and against defendant Givens for the full amount claimed by it, and recognizing its mortgage on the tractor, and also judgment in favor of Lanier against Givens for the full amount claimed by him and recognizing his privilege on the hay press, and ordering that he be paid the amount of his claim in preference to all other creditors.

There was also judgment in favor of defendant in reconvention for the sum of $975.00 for damages which he had sustained on account of the illegal seizure of his property, and it was ordered by the court that the judgment in favor of defendant should offset the judgment in favor of the plaintiff against Givens and ordering that the costs be paid by the plaintiff, Nesbit.

From this judgment only Nesbit, the plaintiff, has appealed.

## OPINION.

The plaintiff, Nesbit, urges in this court that the District Judge erred in dissolving the writ of provisional seizure, and also erred in permitting proof of defendant's reconventional demand against him, on the ground that his claim was based upon a promissory note and that the claim of the defendant, Givens' was unliquidated and could not be plead as an offset against his liquidated claim.

Under the view which we take of this case, only two points raised need be passed on by us, which are, whether the plaintiff was entitled to the writ of provisional seizure, and second, whether the defendant was entitled to offer proof of his reconventional demand.

Plaintiff's suit was filed on November 3, 1920, and on the same day the court ordered that a writ of provisional seizure

be issued. The writ was issued and on that date the sheriff seized the property which was mentioned above.

The amount due plaintiff for labor is represented by eight notes, all in the record. We find that on their face all of these notes were due on the date of the filing of the suit. We find, also, in the record a rent note for the sum of $575.00 which is dated October 26, 1920 and made payable on day after date. But on the margin of the note is written the words: "Payable as crop is moved". There is some contention as to when the rent was due. The plaintiff alleges and swears that the rent was due on the date on which the writ issued. The defendant, on the contrary, claims that the rent was not due until the crop was harvested. But due to the fact that the defendant Givens signed the note, which we find in the record, for the amount of the rent and made the note payable on October 27, 1920, we conclude that it was understood that the rent was due on that date. It is true that the plaintiff, Nesbit, refused to accept this note, but we think the date on which defendant made it payable indicates very clearly that he considered the rent due at that time.

Our conclusion is that the entire debt sued for was due on November 3, 1920, the date on which the writ was applied for and issued.

The testimony shows that neither the rent nor the balance due on wages was paid on that date and therefore the rent and wages were due and payable on that date.

It has repeatedly been held that the mere fact that rent is due and unpaid is sufficient reason for the lessor to apprehend that the property may be removed from the leased premises.

Lalaurie vs. Woods, 8 La. Ann. 366.

Wallace vs. Smith, 8 La. Ann. 374.

Shiff vs. Ezekiel, 23 La. Ann. 383.

But in all the cases where it has been so held there appears to have been grounds for the lessor to apprehend that the reason for the lessor's failure to pay the rent was his desire or intention to remove his property.

In the case of Lalaurie vs. Woods, *supra*, it was shown that the lessee had advertised his goods for sale.

In Wallace vs. Smith, *supra*, the court found "other circumstances justifying the allegation of fear of removal".

In the case of Shiff vs. Ezekiel, *supra*, the court said:

"Failure to pay the rent was sufficient cause for the provisional seizure; the property of the defendant in the premises being for sale, the plaintiff might justly fear its removal."

The foundation or basis of a writ of provisional seizure is fear on the part of the lessor that the lessee will remove the property on which he has a lessor's privilege from the leased premises and that he may be thereby deprived of his lien and in order to sustain the writ the lessor must show that he had good reason fearing that the property would be removed.

See Code of Practice, 287.

The failure of a lessee to pay the rent when due might under some circumstances justify the fear that he would remove the property.

In the case of Fox vs. McKee, 31 La. Ann. 67, the court said:

"This court has often decided that the lessee's failure to pay the rent constitutes a good reason for the lessor to apprehend that the property, subject to his pledge may be removed from the premises leased. That was and is the strictest construction that could or can be placed upon the law, and—inasmuch as it has been adopted for upwards of twenty-five years—we adhere to it; but we are not inclined to extend it and to hold that his tenants, for the only reason that the rent was not paid on the day fixed in the lease, and though the next day or before the seizure the tenant offers to pay and the lessor refuses to receive the amount of the rent. Under such circumstances, the failure to pay authorizes the dissolution of the lease, but does not authorize the provisional seizure."

In Dillon vs. Porier, 34 La. Ann. 1103, the court said:

"The law, therefore, does not require that he (the lessor) shall concern himself about his lessee's honest intent to pay but only whether his intent is to remove the property and destroy the lien, whether the motive of the removal be good or bad."

The question for the court to decide in the instant case is whether plaintiff had good reason to fear that the lessee would remove the property from the leased premises and thereby defeat his lien.

We find that in the latter part of the month of October, 1920, the plaintiff became anxious about his rent and the amount due him for wages as a laborer during that year and that he had a talk with the defendant, during which conversation the defendant informed him, plaintiff, that he had no money with which to pay the rent and his other obligations but that he expected to harvest his crop of sweet potatoes at an early date and that he would pay him out of the proceeds of the sale of the potatoes. At the time he informed plaintiff that he had arranged to sell the potatoes to a dealer in Ruston, Louisiana, at 80 cents per crate or bushel, and that after paying freight the potatoes would net him 61 cents per bushel, Defendant also told plaintiff at that time that he would ship the potatoes in the name of plaintiff attached to draft to the bill of lading, the draft to be made payable to the plaintiff, thereby insuring the plaintiff

against loss on account of the removal of the potatoes. This arrangement seemed satisfactory to plaintiff. Not only did he not raise any objection thereto, but he expressed satisfaction therewith. With this understanding, the defendant Givens made arrangements to ship his potatoes in a car with another party, informing the other party at the time of the arrangement he had made with his lessor on the subject. He also ordered crates from Ruston which crates were promptly shipped.

On the morning of November 3rd defendant Givens went into the field with a crew of laborers preparatory to digging the potatoes to be shipped under the agreement which he had made with the plaintiff. The plaintiff it seems raised some objection to the digging of the potatoes on the ground that the ground was too wet. The defendant, Givens began to cut the cane, he says with the intention of having the same winddrowed, so as to protect it against cold. Plaintiff left the field and went to Winnsboro and produced the issuance of the writ.

The defendant swears, and his testimony on this point is not disputed by plaintiff, that after he learned that the plaintiff intended to procure the issuance of a writ and have the property seized, he went to plaintiff and told him that while he had no money with which to pay the claim yet he would sell to him any part or all of the crops on the place to satisfy his claim for rent and for wages. He says that the plaintiff gave him no answer but left him and that he heard no more about the matter until he was informed that the writ had issued.

It is undisputed that in the latter part of the month of August in that year the defendant removed some 35 or 40 bales of hay from the leased premises to the town of Gilbert where it was stored. Givens says that this hay was damaged; that there were no sheds on the leased premises where the hay could be protected, and that he removed the hay to Gilbert purely to protect it against the weather. He says that this hay was moved with the full knowl- of the plaintiff, Nesbit.

Under the circumstances above outlined, we do not think that the plaintiff was entitled to the writ. It is true the rent was due, but the plaintiff had no reason to believe that the defendant intended to remove any of the property from the premises in order to defeat his rights as lessor. In fact, the defendant virtually placed the property in the hands of the plaintiff in such a way as to guarantee that the proceeds of the sale thereof would go to him for the payment of his rent.

We do not think that this writ was properly issued, and the judgment dissolving same must be affirmed.

As already stated, there is no question but that plaintiff was entitled to judgment against defendant for the full amount sued for, $975.00.

With reference to defendant's reconventional demand, it is said by plaintiff and earnestly insisted on that his exception of no cause of action should have been sustained and defendant's reconventional demand against him dismissed.

Under the jurisprudence prior to the passage of Act 50 of 1886 a defendant had no right to reconvene for damages sustained by him on account of the issuance of a conservatory writ but was relegated to an action on the bond. But Act 50 of 1886 amended article 375 of the Code of Practice and added the following:

"And provided further that in all cases of arrest, attachment, sequestration, provisional seizure and injunction the defendant may, in the same suit by reconventional demand, recover from the plaintiff the damages he may have sustained by the illegal resort to such writ."

The evidence shows that the defendant lessee had some six or seven acres planted to sweet-potatoes, about fifteen acres in corn and soy beans, several acres in lespedeza and one acre in cane. Part of the hay had been cut and ricked, but was left in the field and never baled. The potatoes were never gathered and were a total loss. The plaintiff having been appointed keeper by the sheriff gathered some of the corn and made some syrup from the cane. The evidence makes it perfectly clear that the defendant lessee sustained quite a loss on account of the seizure of his property. The District Judge, after hearing all the evidence and considering the facts reached the conclusion that the defendant was damaged in the sum of $975.00. We cannot say that he manifestly erred in his findings. The plaintiff having caused damage to defendant by the illegal issuance of the writ must respond.

Just why the potatoes were not harvested or why the hay was not taken care of we are not informed, but the facts are that these crops were a total loss to defendant.

Under the above views, we think it not necessary to pass upon the other questions raised.

Under all the facts, our conclusion is that the judgment of the lower court is correct on all points which are brought up for review to this court and it is therefore affirmed with costs.