**SMITH et al. v. TRIPPE MOTORS, Inc.**

No. 5989.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

James T. Shell, Jr., of Bastrop, for appellant.

Harry S. Hawthorne, of Bastrop, for appellees.

TALIAFERRO, Judge.

Plaintiffs, the widow and heirs of W. H. Smith, deceased, sue to recover of the defendant, Trippe Motors, Inc., the sum of Nine Hundred Ninety ($990) Dollars, alleged to be due for rent on a certain filling station and garage building in the City of Bastrop, Louisiana, for the months of January to June, 1938, both inclusive, at the rate of $165 per month. A writ of provisional seizure issued upon prayer therefor, under which the movable contents of the leased building were seized.

Defendant moved to dissolve the writ on the following grounds, to-wit:

1. That the allegations of the petition disclose neither a cause nor a right of action.

2. That the allegations of fact upon which the writ issued are false and untrue in that:

Defendant had not removed, nor did it intend to remove any of its assets from the alleged leased premises in order to deprive plaintiffs of any lien or privilege they might have thereon, and that plaintiffs were without reasonable grounds of fear that such would be done.

3. That as additional reason for the position that said writ issued contrary to law, "no legal and valid contract of lease existed between plaintiffs and your mover" during the period for which rent is sued for. To support this conclusion, the mover, in nearly three typewritten pages, narrates the history of its relations with plaintiffs (as lessor and lessee), beginning in April, 1933. It is said therein that mover is engaged in the retail automobile, garage and filling station business, and, as such, "has for the past several years occupied plaintiffs' said premises and conducted its business therein." It is admitted that its occupancy of the building during this period has been in the capacity of lessee, and that it monthly paid rent thereon of varied amounts, until December 31, 1937. The reasons for not paying rent subsequently falling due (which is for the period sued for) are set up at length. We omit details of the reasons here as they have been made a defense and are incorporated in defendant's answer and will be referred to later herein. The crux of said reasons is that defendant believed it was entitled to a reduction of rent after December, 1937, but had been unsuccessful in its efforts to reach an agreement thereon with W. T. Smith, a plaintiff, who was acting as the authorized agent of the other owners. Because of this alleged lack of understanding, fixing definitely the monthly rent to be paid after December, 1937, mover contends that there was no legal and valid contract of lease between it and plaintiffs for that period.

Mover sues to recover a reasonable fee of his attorney for services rendered in dissolving the writ, and reserves the right to hereafter sue for all other damages sustained on account of the illegal issuance of said writ and seizure thereunder.

By agreement of counsel, the motion to dissolve was referred to the merits for trial. Some two months thereafter defendant filed an amendment to said motion, wherein it pleaded in the alternative articles 2 and 3 of the motion, in the event the Court should overrule its exception of no cause and of no right of action incorporated therein. On the same date defendant excepted to the petition as disclosing neither a cause nor a right of action. Three days later, before any definite action was taken on the motion or exception, plaintiffs offered for filing a supplemental petition. It was allowed over defendant's objection. It was designed to meet the issue raised by the exception against the sufficiency of the original petition. The exception was argued and overruled. Defendant then answered. After admitting its corporate capacity, defendant denied all other allegations of the original and amended petitions. Furthering answering, it says:

That on April 15, 1933, it entered into a written contract with plaintiffs and the Monroe Automobile & Supply Company, a co-partnership of Monroe, Louisiana, holder of a large mortgage on the leased property, and represented therein by its agent and partner, W. L. Ethridge, whereby defendant leased the property until December 31, 1934, on a graduated monthly rental, with the understanding that the rent would be paid directly to said mortgagee.

That after expiration of said written lease, it was not renewed in writing but defendant continued to occupy the leased premises as lessee, on a month to month basis, at various rental amounts agreed upon between it and said mortgagee, the rentals being regularly paid to the mortgagee until February, 1937; that said mortgagee, in all of said agreements, was acting for itself and with the plaintiffs' authority be-

cause of the large mortgage indebtedness held by it against the property.

That in February, 1937, defendant, acting through its agent, E. S. Trippe, called upon said Ethridge with the view of procuring a reduction of the rent, and that it was then agreed between them that no written lease would be signed, but that defendant could continue its occupancy of the property at the monthly rental of $165, with the specific understanding that this amount would be "reduced to a fair rental under existing business conditions in the event either or both of the two Southern Kraft Corporation Paper Mills in Bastrop should be closed and not operating." That in making said agreement with defendant, Ethridge was acting under specific authority from the plaintiffs, who thereafter were advised of such agreement and interposed no objection thereto.

That from the date of this last agreement until June, 1937, the agreed rental was paid as it fell due, to the Monroe Automobile & Supply Company, but thereafter, at the request of W. T. Smith, all payments were made directly to him.

That the business people of Bastrop, especially those engaged in the automobile business, are largely, if not entirely, dependent upon the pay rolls of said two paper mills to operate at a profit; and that in November, 1937, one of said mills closed down and has not since resumed operations; that the other mill at the same time, reduced its operations to one-half time basis and has not changed therefrom; that as a result thereof, defendant was forced to operate his own business at a loss.

That in January, 1938, defendant's agent, E. S. Tripp, advised W. T. Smith of these economic conditions and that it would be necessary to reduce the rent to a fair basis on that account; that Smith then stated that he would take the matter up with defendant later with the view of adjusting the rent, but did not do so; that like efforts were made with Smith to reach an agreement looking to a reduction of the rent in the months of February, March, April and May, 1938, and on each occasion he agreed that a reduction should be made, but never did specify any amount thereof.

That on the morning of June 8th, a few hours before this suit was filed, Trippe advised Smith that defendant was ready and willing to pay all rent due by it, provided a reduction was made in accordance with the agreement with Ethridge, above referred to; that Smith then and there declined to indicate what amount would be acceptable to him and refused to discuss the question further; and, without further notice or advice, sued out the writ herein.

That, due to depressed business conditions prevailing in Bastrop for the period of time rent is sued for, resulting from the non-operation of said paper mills, the rental value of real estate therein had declined two-thirds; that defendant was due plaintiffs only a fair rental on the leased property for said time, which, it is alleged, should not be more than $75 per month or $450 for the period.

Defendant reconvened and avers, as an element of the predicate of its demand, that W. T. Smith entered its employ on October 1, 1931, as clerk and bookkeeper, and held that position until January 12, 1937; that in December, 1931, he, acting for himself and as the agent of plaintiffs, opened an account with defendant in the name of W. H. Smith Estate, which remained active until said W. T. Smith ceased to work for defendant; that purchases of goods, wares and merchandise and the value of services rendered were charged thereon; that the account, with all debit and credit entries thereon, was exclusively kept and made by said W. T. Smith; that at the time he left defendant's employ that account showed a balance of $556.93 due defendant; that said Smith, without defendant's knowledge or consent, balanced this account by debiting said balance due thereon against his own account with defendant a few days after he left defendant's employ.

That on November 27, 1934, the state and parish taxes due by the W. H. Smith Estate on the leased premises for the year 1933, amounting to $400.85, were paid by the Estate, but that said W. T. Smith, without defendant's knowledge or consent, charged the same to defendant by crediting the amount thereof on the W. H. Smith Estate account with defendant, and that he followed the same course with regard to the Estate's 1933 taxes due the City of Bastrop, amounting to $163.35.

That the state and parish taxes for the year 1934, amounting to $305 on said property were paid by the defendant at the request of W. T. Smith, with the understanding that said amount would be charged to the W. H. Smith Estate account, which was not done.

That said W. T. Smith made certain repairs to the leased premises in March, 1936,

at an expense of $85 and issued check in payment thereof against the account of said estate in a bank in Bastrop, but instructed the bank to charge same, when presented, to defendant's account, which was done; all without its knowledge or consent.

Defendant specifically denies that it was obligated nor did it agree to pay any of said taxes nor the cost of said repairs, and, therefore, charging the amounts thereof to it was wrongful and illegal.

Judgment against plaintiffs for said item of $556.93, said taxes, amounting to $869.-20, and the item of $85, is prayed for in reconvention. Defendant also sues for damages resulting from the alleged illegal seizure of its property.

There was judgment for plaintiffs for the full amount sued for with 5% interest from judicial demand, less a credit of $85 with like interest from judicial demand, being the repair charge. In all other respects the reconventional demand was rejected. The writ of provisional seizure was maintained.

Defendant prosecutes this appeal.

The exception of no cause and no right of action filed in connection with and as a part of the original motion to dissolve, was directed against the omission from the original petition of specific allegations that the execution, on the part of defendant, of the contract of lease alleged upon had been duly authorized by formal corporate action. The amended petition was designed to meet this omission. It contains allegations that the lease was executed on behalf of defendant by an agent or agents vested with authority to do so. But defendant strenuously contends that if the original petition is vulnerable to the exception, so far as relates to the motion to dissolve, it may not be imbued with vitality through amendment; that the legality of the writ of provisional seizure must be determined and its efficacy, or lack of such, arrived at from the status of the original pleadings, not augmented by any subsequently filed. Terzia v. Grand Leader, 176 La. 151, 145 So. 363 is cited to support this position.

We think mover's contention correct, as a legal principle, but are also of the opinion that the original petition in the present case is not vulnerable to the attack made upon it.

While it is true it is not expressly alleged that the lease contract was executed on the part of defendant by an agent or agents act-ing under corporate authority so to do, yet it is alleged that defendant has occupied the premises for a number of years as lessee and for that period has conducted thereon a garage and filling station business, for the use of which it has monthly, and until January 1, 1938, paid the agreed rental; that, notwithstanding such non-payment of rent, its occupancy of the premises, as lessee, has continued unchanged.

Admitting, arguendo, that defendant's original occupancy of the property was not preceded by a lease agreed to on its part by someone formally authorized so to do, do not the allegations, as above summarized, if true, clearly show that such lease had been approved and ratified by the corporation? Does not the continued occupancy of the premises and the payment of rent from corporate funds fasten upon the corporation the status of lessee as fully and completely as would be the case had formal action of its board of directors authorized the making of the lease for it? We think so. The corporation, according to the petition, has reaped the benefits of the contract whereunder it had the right to use and occupy the premises as lessee, and now may not be heard to gainsay that by its acts and deeds above related, it has not fully ratified and approved such contract. It is too late to repudiate the action of the person or persons through whose agency the property has been, and at time of suit was, occupied by defendant. Fudickar v. Glenn et al., 5 Cir., 237 F. 808; Poche v. New Orleans Home Inv. Co., Ltd., 52 La. Ann. 1287, 27 So. 797; Gueydan v. T. P. Ranch Company, 156 La. 397, 100 So. 541-543; Administrators of Tulane Educational Fund v. B. G. Carbajal, Inc., 180 La. 355-359, 156 So. 416.

The next phase of the motion to dissolve is that which challenges the truth of the sacramental allegations to the effect that plaintiffs had good reason to believe that defendant would remove from the leased premises the effects upon which the landlord's privilege rested.

It has not been proven that defendant had removed nor intended to remove from the leased premises, any property for the purpose of defeating the lessors' privilege thereon. However, we think the circumstances were such that in law plaintiffs did have good reason to believe that their privilege would be lost in whole or part on the effects it rested against.

Plaintiffs were insisting upon the payment of $165 per month rental, while de-

fendant refused to pay this amount and persisted in its position that it was entitled to a reduction of rent. The situation was deadlocked for nearly six months. A lawsuit only could dissolve the existing impasse. Defendant's assets in the building were subject to disposition daily, even in due course of trade. If plaintiffs had simply sued for rent, without coupling therewith the seizure, this would have precipitated a controversy over the correct amount due, with customary animosities, which would have required a year or more to have been finally adjudicated. In the meantime, the effects subject to the privilege could be, in due course of business, largely if not entirely, disposed of. Any judgment in their favor might possibly be barren of beneficial results because of lack of property of value to execute on.

To further illustrate: A merchant's stock of groceries may be the only property against which his lessor's privilege operates. He may, without notice to others, decide to go out of business; therefore, does not restock, but gradually depletes his stock by daily sales in regular course of business. He has no fraudulent intention of depriving his landlord of his rent, but is in default thereon. Surely, in such circumstances, the landlord, as a legal proposition, would be clearly justified in swearing that he has good reason to believe the lessee "will remove" the affected stock and thereby loss of the privilege thereon would occur. It is equally certain that a seizure, made under such circumstances, would be upheld.

█ █ It is not necessary to justify the issuance of a writ of provisional seizure under Art. 287 of the Code of Practice that the lessor swear that the lessee has removed any of the chattels affected by his privilege, for the purpose of fraudulently defeating the lessor's right thereon, or that the lessee intends doing so. It suffices to justify the affidavit for and the issuance of the writ that the lessor has good reason to believe that the lessee will remove the affected property from the leased premises, and thereby entail loss of the privilege thereon.

It was said and held in A. Shiff, Agent v. Ezekiel, 23 La.Ann. 383, that: "Failure to pay the rent was sufficient cause for the provisional seizure; the property of the defendant in the premises being for sale, the plaintiff might justly fear its removal."

The case is supported by: Heirs of Lalaurie v. F. A. Woods, 8 La.Ann. 366; John B. Wallace v. H. F. Smith, 8 La.Ann.

374; John J. Dillon v. V. L. Porier, 34 La. Ann. 1100.

To sustain its position that the writ should be dissolved because the allegations on which it issued were untrue, defendant relies upon: T. L. Nesbit v. Albert Givens, 2 La.App. 298; Virginia Thomas v. J. J. Dundas, 31 La.Ann. 184; Salter et al. v. Duggan et al., 4 La.Ann. 280.

In each of these cases the Court went behind the sacramental allegations of the petitions and received evidence on the issue that the lessor did not have good reason to believe the lessee would remove his effects from the leased premises. We do not think these cases controlling of the issue now considered.

The Salter case simply holds that a lessee may proceed summarily to dissolve the provisional seizure of his property on the ground that the affidavit made to procure issuance of the writ is false.

In the Thomas case the writ was maintained, while in the Nesbit case the writ was dissolved. Both cases presented exceptional features, and judgments therein, of course, are based thereupon.

█ Since the lease was on a month to month basis and defendant paid rent at the rate of $165 per month for nearly a year immediately prior to January 1, 1938, reconduction of the lease agreement took place thereafter, with the same terms and conditions as prevailed theretofore, unless it be clearly shown that such terms and conditions were modified in some respect.

Defendant, through Mr. Trippe, did interview Mr. Ethridge in February, 1937, about reducing the rent on the leased property, and Mr. Ethridge, on behalf of his company, consented to accept payments of $165 per month on his company's mortgage. It was satisfactory to him that the rent be fixed at this amount. In the same capacity, he did agree to accept reduced monthly payments in the event the paper mills or either of them ceased to operate while defendant occupied the leased premises. However, Mr. Ethridge makes it quite clear that he did not presume to act for plaintiffs in this transaction, but left to them the right to lease the property. He was interested in the proceeds of the rent more than in the lease itself.

Mr. Trippe testified that on his return to Bastrop after the interview with Mr. Ethridge, he informed Mr. Smith of the purport of the understanding, stating that Eth-

ridge wanted another written lease signed, but that he (Trippe) declined to do so, and that Mr. Smith replied, "I do not blame you for not signing the contract." Trippe does not contend that Mr. Smith then and there ratified the agreement reached with Ethridge regarding the reduction of the rent if the mills closed down. Mr. Smith denies positively that he did so.

It is true that Trippe approached Smith in February about reducing the rent and that Smith replied that he would later on discuss the matter. Thereafter, when Trippe would mention the matter to Smith, his reply was that defendant was in no position to discuss a reduction of the rent until and unless past due rent was settled. Defendant expressed at all times a willingness to pay rent on a fair basis of reduction, but no agreement on the subject was ever reached; in fact, it was never seriously discussed or considered by Mr. Smith.

In this connection it is pertinent to add, as having a possible influence upon Mr. Smith's attitude toward reducing the rent, that about July 1, 1937, when the Monroe Automobile & Supply Company was threatening to foreclose its mortgage on the leased property, he applied to the Debt Moratorium Commission of Louisiana for relief against the mortgagee's contemplated action and was granted a respite of six months on condition that the property be leased for $165 per month, of which $125 should be paid to the mortgagee, and that this respite was renewed by the Commission for another six months ending July 1, 1938.

■ Whatever else may be said on the subject, it clearly appears that plaintiffs, through their agent, never agreed to the rent reduction contended for by defendant, and this being true, the lease in effect on December 31, 1937, continued in effect by reconduction between the parties until this suit was filed.

Plaintiffs do not seriously disagree with defendant's contention that the repair bill of $85 was improperly charged to its account. The lower Court allowed this amount as a credit, and, as we think, correctly so.

■ We are of the opinion that defendant is entitled to recover the amount of taxes sued for in its reconventional demand. Mr. Trippe is positive his company never agreed to pay these taxes as a part of its obligations as lessee. Mr. Smith is equally positive that such an agreement was made. The written contract of lease signed by the parties on April 15, 1933, balances the scales in defendant's favor. That instrument contains an option for defendant to purchase the leased property during the life of the lease at a price equal to the mortgage thereon, "plus all taxes now due or that may become due before the exercise of the option." It is clear from this language that defendant was not obligated to pay these taxes unless it purchased the leased property. The option was not availed of. Therefore, these taxes were a direct obligation of plaintiffs and those of 1933 were, as a matter of fact, paid by them, but charged to defendant.

Plaintiffs stress the fact that after Smith left defendant's employ, defendant paid other taxes on the leased property and urges such action as corroborative of Smith's testimony that defendant agreed to pay the taxes sued for. This action is satisfactorily explained by Mr. Trippe. He testified that defendant's records, as kept by Mr. Smith, indicate that it was due him about $1,700 when he left its employ, and that said taxes were paid at his request and charged to his account.

It is also argued that defendant had access to the books kept by Smith and at no time questioned or made objection to the entries therein, especially those for which judgment is asked in reconvention. As so often happens with a small corporation, the bookkeeping end of defendant's business was left practically entirely to the person charged with that duty, with little or no check by others on details. The significance of the entries in question was not discovered until after Smith left defendant's employment.

■ We do not think defendant has good grounds to seriously complain of the transfer of the balance due on the W. H. Smith Estate account to the account of W. T. Smith, as a debit. Such action was not authorized, but in dollars and cents, defendant has not been injured. It is not contended that the transfer of this balance put the W. T. Smith account in red.

For the reasons herein assigned, the judgment appealed from is amended by awarding defendant judgment on its reconventional demand against the plaintiffs, jointly and in proportion to their ownership in the leased property, for the sum of $869.46, with 5% per annum interest there-

on from judicial demand, in addition to the amount awarded by the lower court. This judgment in favor of defendant to operate as set-off to that in plaintiffs' favor herein. And, except as amended hereby, the judgment appealed from is affirmed, with costs.