MANUFACTURERS CASUALTY INSUR-
ANCE COMPANY, Plaintiff,

v.

MARTIN-LEBRETON INSURANCE
AGENCY, Defendant.

Civ. A. No. 5174.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 10, 1956.

Porteous & Johnson, William A. Porteous, Jr., New Orleans, La., for plaintiff.

Normann & Normann, Frank S. Normann, New Orleans, La., for defendant.

**J. SKELLY WRIGHT, District Judge.**

The defendant herein, Martin-Lebreton Insurance Agency, general insurance brokers, was the representative and agent in New Orleans of the plaintiff, Manufacturers Casualty Insurance Company. As such it executed a performance bond on application of one J. H. Geiger, under which the Manufacturers Casualty acted as surety for Geiger on a contract with the Orleans Parish School Board covering repair work at the Warren Easton High School in New Orleans. When Geiger defaulted, the insurance company took over the work and completed the contract. Alleging that its agent, the defendant here, executed the bond without authority, the insurer seeks judgment in the amount of $7,725.41, representing its loss on the bond. Since this is a nonjury case in which the evidence, with the exception of one uncontroverted affidavit, is all documentary, the case is ripe for disposition by summary judgment.

Martin-Lebreton received an application from J. H. Geiger requesting performance bonds covering two of his contracts, one in the amount of $2,780 and the one in suit in the amount of $13,800. Martin-Lebreton requested authority from the insurer to execute the bonds in its name covering the two contracts. By wire of January 23, 1951, authority was granted as to the $2,780 contract. On the same day the insurer also wrote a letter to Martin-Lebreton confirming the wire and stating in addition, "In regard

to the bond of approximately $13,800 for Mr. Geiger we wish to advise that as soon as you know the other bids we wish that you would let us know immediately and we will see what we can do toward authorizing this bond."

On January 24, 1951, after receipt of the wire but before receiving the insurer's letter of January 23rd, Martin-Lebreton wrote the defendant, thanking it for authorization of the $2,780 bond and advising it "we expect both the $2,780.00 and the $13,800.00 to break momentarily. We assume that it is in order to execute bonds covering both contracts should we be called upon to do so." On January 25th, both bonds were executed by Martin-Lebreton in the name of the plaintiff insurer, and were, on January 29, 1951, pursuant to state law,[1] recorded with the contracts in the office of the Recorder of Mortgages for the Parish of Orleans. On receipt of the Martin-Lebreton letter of January 24th stating "We assume that it is in order to execute bonds," the insurer wired Martin-Lebreton "Do Not Execute Bond J H Geiger Thirteen Thousand Eight Hundred Unless Authorized See Letter January Twenty Third." The wire was dated January 30, 1951.

On February 3, 1951, Martin-Lebreton advised the insurer that both bonds had been executed, explaining that "The $13,-800.00 case and the $2780.00 broke simultaneously." The letter further said "I feel sure that if you and your underwriting committee look at this case from an objective point of view, you will concur with the actions already taken." On March 8, 1951, Martin-Lebreton forwarded to the insurer its report covering insurance and bonds written by it during January, 1951, and enclosed with the report its check covering the insurer's portion of the premium on the bond in suit.

On March 16, 1951, Martin-Lebreton wrote the insurer advising that although no official notice had arrived, there was no doubt that, by reason of the default of

the contractor, a loss would be sustained on the bond in suit. On March 21, 1951, without referring to the Martin-Lebreton letter of March 16th, the insurer wrote the defendant expressing surprise at receiving the execution report covering the $13,800 bond and advising that it would hold Martin-Lebreton responsible for any loss thereon. The insurance company did not at any time notify the Orleans Parish School Board, or anyone, either before or after the default of Geiger that the bond was unauthorized, nor was any attempt made to cancel the bond. On the contrary, the insurance company, after enlisting the aid of Martin-Lebreton while insisting on its right to claim reimbursement for any loss, completed the contract. Martin-Lebreton, under a disclaimer of personal liability on the bond, cooperated fully with the insurer in completing the contract.

The plaintiff contends that the Martin-Lebreton Agency was under instructions not to execute any bonds in its name without prior authority and that, as to the bond in suit, the defendant was specifically instructed not to execute it. The insurer seeks to account for its failure to act after receipt of the Martin-Lebreton letter of February 3rd, advising that the bond had been issued, on the ground that under state law,[2] since the bond had already been recorded in the Mortgage Office in the Parish of Orleans with the contract, the insurer was bound thereon and no action on its part could relieve it from its responsibility.

The defendant agency admits that the bond was executed without authority. It argues, however, that in the state of the relationship between the parties, at the very least the insurer owed it a duty to disavow its action immediately, if the insurer intended so to do, in order that the agency could seek another bond from another insurer to substitute for the one in suit.

 The defendant is right. Where an agent exceeds his authority, the prin-

---

1. LSA–R.S. 9:4802.

2. LSA–R.S. 9:4802; Tooke v. Burke, 141 La. 746, 75 So. 668.

cipal may, of course, repudiate his act. But the principal may not sit back with wet finger to the wind and then deny his agent's authority. Unless repudiation immediately follows notice, the principal is deemed to have ratified the act of his agent. And this ratification discharges the agent from personal responsibility in the premises. Where, as here, repudiation by the principal may be unavailing as to third parties,[3] and the agent is sought to be held personally accountable, there still arises the duty immediately to notify the agent of disavowal, so that he may protect himself if he can. Succession of Gilmore, 154 La. 105, 97 So. 330; Oliver v. Johnson, 24 La.Ann. 460; Flower v. Downs, 6 La.Ann. 538; Ward v. Warfield, 3 La.Ann. 468.[4]

Unquestionably, Martin-Lebreton acted in good faith in executing the bond. But good faith would not have protected it against its malfeasance if the insurer had acted promptly to disavow its agent's act. Instead of acting promptly, the insurer waited from February 3 until March 21, 1951 before communicating with the defendant regarding the bond. At that time it was too late to disavow its agent's action. By its own inaction, it had ratified its agent's act. By that time default on the contract was obvious and claim on the bond imminent. The insurer had been so advised by the defendant's letter of March 16. Certainly at that time all chance which the defendant may have had to place this risk with another insurer was gone. And it was gone because the insurer, through ennui or otherwise, had allowed events to follow their course without protest on its part.

The insurer's argument that there was nothing for it to do because it was bound on the bond immediately the bond was recorded with the contract misses the point. It may be true that the insurer was bound as to third parties. But as between its agent and itself, the die was not cast. The insurer had the opportunity of disavowing its agent's action by the simple expedient of advising the agent thereof, and it failed to do so. Through its inaction, it prejudiced the position of its agent and it is therefore estopped to make any claim over against that agent for its loss on the bond. By its silence where there was a duty to speak, it ratified the act of its agent and discharged the agent from personal responsibility on the bond.

Judgment for defendant.

3. See Note 2.

4. The only relevant case cited by plaintiff in support of its position is American Fire & Marine Ins. Co. v. Seymour, La. App., 144 So. 775, in which an insurance agent was held liable for the loss on a policy which he issued without authority from the insurer. In that case, however, notice of the claims on the policy reached the insurance company at the same time as notice of issuance of the policy. Obviously there the insurer had no opportunity to disavow the action of its agent.