## No. 10,326.

### First National Bank of Natchez vs. A. Moss and Co. et al.

The writ of attachment is a harsh remedy, and it will not be sustained unless the rules of law which authorize it have been strictly complied with.

The remedy by attachment does not embrace cases of prospective conditional and contingent liability; it must be confined to cases where, in addition to the other requisite circumstances, there is an *existing* debt, although the period of its payment has not arrived. Therefore an attachment will not be maintained against the property of the drawer of a bill of exchange, before its maturity, although the acceptor has been attached and has become insolvent before the attachment, for until maturity the drawer is not the unconditional debtor of the holder.

National Bank vs. Moss & Co. et al.

The acceptance of the drawee is *prima facie* proof that the drawer had the right to draw.

An attachment must stand or fall, according to the state of facts existing at the date of its issuing, and cannot be cured by a subsequent event.

The state of facts must be tested by the pleadings as made at the date of the attachment, when the motion is to dissolve on the face of the papers.

Defective pleadings cannot be cured by amendments, after issue joined, which contain substantial averments not set forth in original pleadings.

# APPEAL from the Ninth District Court, Parish of Tensas.
## *Young*, J.

### *S. L. Elam* and *Luce & Lemle* for Plaintiff and Appellant:

1. An affidavit, in which the creditor swears to the existence of the debt sued on, and which alleges the Codal grounds, is sufficient. C. P. 237 to 243.
2. An averment that defendant is indebted upon a bill alleges possession and ownership in plaintiff. 18 Ann. 554.
3. Where attachment issues under C. P. 237, the character of indebtedness, which the affidavit alleges to exist, can be set up in the original and amended petitions.
4. Where the drawer of a bill has no funds in the hands of a drawee, to meet the payment of the bill, the drawer is unconditionally bound, and notice of dishonor is not necessary. 1 N. S. 215; 3 N. S. 147; 12 La. 386; 12 R. 231; 14 Ann. 489; 11 Ann. 269; 22 Ann. 484; 25 Ann. 562; Daniels on negotiable instruments, Vol. 2, Sec. 1082, p. 125; 2 How 483.
5. Where the drawer and drawee firms have common members, presentment and notice of dishonor not necessary. Daniels on negotiable instruments, Vol. 2, Sec. 1086; Randolph on commercial paper, Vol. 3, Sec. 1203.
6. The issues discussed have not been raised and should not be considered.
7. When plaintiff alleges that the drawer had no funds to meet the bill, an excuse for non-presentment, etc., is made out, and if there are qualifying circumstances, which would give the drawer the right to exact payment of the bill, such as being accommodation, drawer, keeping open account and the like; such are defences which must be urged by the drawer, as they are peculiarly within his knowledge. Daniels, Vol. 2, Sec. 1084.

### *C. J. & J. S. Boatner* for Defendants and Appellees:

The petition and affidavit on which an attachment is issued must, in order to maintain the writ, contain positive and unambiguous allegations. Nothing must be left to inference. 11 Ann. 622.

The Code of Practice, in prescribing the conditions on which an attachment may issue, requires something more than the *prima facie* allegations, which suffice for the petition itself and a judgment thereon. Ib.

An attachment will not lie against the drawer of a bill of exchange in favor either of the acceptor or endorser. Neither is his creditor, in the sense of the law. The right of the creditor must be absolute, and not dependent upon any conditions. C. P. 242; Reed vs. Wair, 2 Ann. 1498; 3 H. 510; 13 Ann. 526; 9 Ann. 526; 14 L. 64; 5 R. 449.

No attachment will lie against the drawer of an unmatured bill of exchange. His obligation to pay is not proved by conditions. The debt for which an attachment lies must be absolute. 10 Ann. 498.

When the drawer of a bill of exchange has funds in the hands of the drawee, or reasonable ground to expect acceptance and payment, he is entitled to the rights of a drawer in good faith, and his liability is purely contingent. 9 La. 128; 19 La. 370; 12 R. 132; 3 Ann. 385; 11 Ann. 269; 12 Ann. 585; 22 Ann. 84; 26 Ann. 154, 472–689.

The acceptance of a bill of exchange is, in the absence of any allegation of fraud or collusion, conclusive of the drawer's right to draw. Daniels' Negotiable Instruments; Parsons' Notes and Bills, Vol. I, Sec. 3, and cases there cited.

The opinion of the Court was delivered by

POCHÉ, J. The plaintiff corporation is appellant from a judgment which dissolved, on motion and on the face of the papers, a writ of attachment sued out by the bank against the defendants on September 23, 1887, on a claim of $7350.

The writ was obtained on an affidavit made by the bank's agent, followed by a petition filed on the next day.

The averment in the affidavit, on which the crucial point of discussion in the present appeal hinges, is in the following words:

"Affiant deposes that he is the attorney and agent of said corporation; deposes further, that the commercial firms of Chas. Moss & Co., and Hartwig Moss & Co., and Chas. Moss, Hartwig Moss and William, Moss, are justly and legally indebted to the said First National Bank of Natchez, of which Joseph F. Foard is president, in the sum of $7350, with legal interest from due, on drafts drawn by Hartwig Moss & Company, on Chas. Moss & Co., and accepted by Chas. Moss & Co."

In the petition which was filed on the next day, in which plaintiff prayed for a moneyed judgment against both firms as well as against the individual members thereof, the board made the following additional averments which have a direct bearing on the issue to be herein discussed: that the amount of the claim sued on was represented by three drafts maturing respectively on October 30, 1887, on November 18th, on November 26th, and on December 4th of the same year, and further, "that Hartwig Moss & Co., are composed of Hartwig Moss, Charles Moss, and William Moss, and said Charles Moss & Co., are composed of Chas. Moss and Hartwig Moss, and that said Chas. Moss and Hartwig Moss, in both firms are the same persons. Plaintiff avers further that said Chas. Moss & Co. have failed and been attached in St. Louis, Missouri, and will not meet and pay said drafts and acceptances. Plaintiff further avers that said Hartwig Moss & Co. have not now and did not, at time of drawing said drafts have any funds with Charles Moss & Co. to meet the payments of said drafts."

The motion to dissolve was grounded as follows:

1. Insufficiency of the affidavit.

2. Prematurity of the suit.

Under the views which we have taken of the controversy, we shall confine the discussion to the second ground of the motion.

Conceding, therefore, but only for the sake of the argument, that the affidavit and the averments of the petition filed on the succeeding day, taken together, were sufficient to show the fact, warmly contested by the defendants, that the bank was properly alleged to have been, at that time, the holder and owner of the drafts sued on, we have reached the conclusion that, at the time of suing out its attachment, the bank was not the absolute unconditional creditor of the defendants, within the requirements of the law on attachments as expounded in jurisprudence.

It appears from the pleadings above referred to, that neither of the drafts had yet reached maturity, and that no demand had been made on the drawee or acceptor, and that of course no notice of the dishonor of the drafts could possibly have been given to the drawers. Now it is an elementary principle in commercial law that the drawer of a bill of exchange or draft is not unconditionally a debtor on account of the same, his *status* as a debtor depending upon a subsequent event, which is the failure of the drawee to pay the same, followed by proper notice thereof.

We note the exception to the general rule, invoked by plaintiff's counsel and which is to the effect that the drawer is not protected by that rule if it appears that he had no funds in the hands of the drawee, and that he had no right to draw on him.

But the averments in their pleadings include but one of the elements which characterized the exception.

They aver that the drawing firm had no funds in the hands of the accepting firm, but they go no further; they do not allege that the drawer had no right to draw.

The inference which they seek to derive from the allegation of the want of funds, that the drawer had no right to draw, is met by two other and distinct allegations in their petition, which are to the effect that the drafts were *accepted* by the drawees, and that the two members of the St. Louis firm, the acceptors, were also members of the Louisiana firm, the drawees.

The irresistible inference is that firms thus composed would have the right to draw on each other, independently of the decisive fact that the drafts had been accepted.

The only other averment relied on by plaintiff to hold the defendants as unconditionally liable on the drafts at the date of attachment, is the allegation that the acceptors had failed and had been attached in St. Louis, and that they would not pay said acceptances.

But under the rules adopted in jurisprudence, that circumstance is not, of itself, sufficient to fix before maturity the liability of the drawer who might make special arrangements for the payment of his bill at the

time and place. that it would become due and exigible. Denegre vs. Milne, 10 Ann. 328.

Before the maturity and the dishonor of the draft the acceptor is the only unconditional debtor of the holder of the instrument, and in such a case the drawer occupies the position of an endorser of a promissory note, whose liability on the note is fixed. by the failure of the maker to meet its payment, after demand and proper notice. It could not be even contended that in case of the failure or insolvency of the maker the endorser would, *ipso facto*, become unconditionally liable on the instrument.    5 Rob. 449, Harrod vs. Burgess.

It has been held in jurisprudence that the accommodation acceptor of a draft could not proceed by attachment against the drawer, who had in the meantime failed, before the maturity of the draft and before paying and taking it up, because the acceptor was himself the debtor of the holder, and not yet the creditor of the drawer.    Read vs. Wan, 2 Ann. 498;  Shannon vs. Langhorn, 9 Ann. 526;  Price et al vs. Risley et al, 13 Ann. 526;  Johnson vs. Flanagan et al, 26 Ann. 689.

It takes no argument to show that the circumstances under which an acceptor, who is absolutely bound on the paper to the holder, will be denied the right of protecting himself in advance of payment by attaching the drawer's property, will operate as a more efficient bar against a similar action by the holder against the drawer who is only a conditional debtor on account of the draft, his indebtedness being dependent on the failure of the acceptor to meet payment.

In Denegre vs. Milne, 10 Ann. 324, the holder of a draft, in which acceptance had been waived, proceeded by attachment against the drawers, before maturity, on the ground that the latter had failed and were insolvent, and the writ of attachment was on motion dissolved by the court, on the ground that "the remedy by attachment does not embrace cases of prospective conditional and contingent liability; it must be confined to cases where, in addition to the other requisite circumstances, there is an *existing* debt, although the period of its payment has not yet arrived. Therefore, an attachment will not be maintained against the property of the drawer of a bill of exchange until its maturity, although he may have suspended payment before the attachment, for until maturity the drawer is not the unconditional debtor of the holder."

In that case the court laid down the following wise and emphathic doctrine:

"An attachment must stand or fall, according to the state of facts existing at the date of its issuing, and cannot be cured by a subsequent

event." Quoting Blanchard vs. Grousset, 1 Ann. 98; Black vs. Zachary, 3 Howard, 510.

. Conceding the legal foundation and the correctness of that rule, plaintiff's counsel object, however, to the attempt of their opponents to test the condition of things at the date of the attachment exclusively by their affidavit and by their petition filed the next day, to the exclusion of an amended petition filed by them on January the 19th, 1888, and they press that petition to our consideration on this appeal.

The motion to dissolve was filed on the 8th of November, 1887, and plaintiff's right to its attachment was therefore at issue when the amended petition was filed. It thence follows that it cannot be considered, if it contains any substantial averment on the issue of the attachment which was not to be found in the original petition.

By reference to the latter it will appear that neither of the drafts had matured, at the date of attachment or of the filing of the petition, while in the amended petition it is distinctly alleged that all four of the drafts had matured, that they had been presented for payment, and that they had been duly protested for non-payment. The state of things thus disclosed is as widely different from the position contained in the original pleadings as light differs from darkness. In other words, everything which, under law and jurisprudence, was lacking to justify the proceedings by attachment in the original pleadings, is supplied, by the lapse of time and by the happening of subsequent events, through the proposed amended petition. Of course the defendants reserved a bill from the ruling of the judge in allowing this supplemental petition. From the very nature of things the events and proceedings therein described, would not have a retroactive effect, so as to make it appear, on the 23rd of September, that maturities to occur in October, November and December following, had already taken place. To argue against the allowance of such amended pleadings under the restricted issue to be herein discussed is, after all, labor to prove a self-evident proposition. Hart vs. Bowie, 34 Ann. 325.

Had the state of facts, disclosed in the amended petition, been accomplished facts, and properly averred at the time that the attachment issued, of course the present controversy would never have arisen.

This oversight, or confusion of dates and ideas, has been the cause of the fallacy of plaintiff's whole contention, and hence counsel have quoted an immense array of authorities in support of the position which they claim under the state of facts recited in their amended petition. The authorities which they quote have been carefully considered by us, and the same are fully endorsed on the proposition which they purport

to elucidate. They will doubtless be of great avail to plaintiff on the merits of the case, and to therein fix and determine the liability of drawers as debtors on their dishonored drafts.

But they have no bearing on the sole issue with which we are now concerned.

The writ of attachment is a harsh remedy, and it can be sustained only when issued in strict compliance with the rules of law which authorize it.

The essential condition is that the defendant must be the unconditional debtor of the seizing party under a certain definite indebtedness, although the period of its payment has not yet arrived. That alone was the issue presented by the pleadings, and finding that such an indebtedness did not exist, we must conclude that the attachment lacked all legal foundation, and that it was properly set aside.

Judgment affirmed.