145 So. 363

**TERZIA v. THE GRAND LEADER et al.**

No. 31687.

Oct. 31, 1932.

Rehearing Denied Jan. 3, 1933.

Todd & Todd, of Bastrop, and McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Shell, Hawthorne & Files, of Bastrop, for appellees.

ODOM, J.

Plaintiff leased to William Wolff the ground floor of a brick building in Bastrop, La., at $135 per month for a period of five years, beginning December 15, ·1923. The lease contract was in writing and provided, among other things, that the lessee should have the option of renewing it for an additional period of five years upon giving the lessor notice in writing to that effect three months previous to the expiration of the original five-year period, and that the leased property should be used only for a mercantile establishment. The lessee gave his notes for the monthly rentals, which were to be paid in advance.

William Wolff, the lessee, died prior to the expiration of the original five-year period of the lease, and his heirs gave notice, on September 12, 1928, that they would renew the lease for an additional period of five years "upon the same terms and conditions as stipulated in the lease above described."

The present suit was filed by plaintiff on August 21, 1931, against "The Grand Leader, Joe Zipkes and Sam Zipkes," a commercial firm then occupying the building, alleging that the "monthly installment" due on August 15, 1931, had not been paid, although amicable demand had been made, and that by reason of such default and for the further reason that defendants were about to remove the goods from the premises, the defendants were due nòt only that amount, but all subsequent installments up to the end of the lease as extended; the total amount

alleged to be due plaintiff being $3,780, for which amount he asked judgment. Coupled with this demand is one for provisional seizure of all merchandise in the leased building, as well as that which had been removed within fifteen days. A writ issued accordingly, and merchandise appraised at $12,000 was seized.

 Defendants excepted to the petition on the ground that it set out no cause or right of action against them and moved that the seizure be dissolved on that ground. The exception and motion to dissolve were held under advisement by the trial judge until November 17, 1931, on which date plaintiff filed a supplemental petition over defendants' objection. The motion to dissolve the seizure was sustained and plaintiff's suit was dismissed at his costs, with $250 damages allowed defendants for attorneys' fees. Plaintiff appealed.

1. The two questions presented for our consideration are: First, whether the original petition sets out a cause of action against these defendants; and, second, if it does not, whether the owner of a building, who procures the issuance of a writ of provisional seizure under which an occupant's goods are seized on a petition which sets out no cause of action, can maintain the writ and seizure by subsequently filing an amended petition which does set out a cause of action.

2. On the first point, our conclusion is, and we hold, that plaintiff's original petition sets out no cause of action and that under it he was not entitled to the writ.

Article 2705 of the Civil Code provides that: "The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased."

The right of pledge or privilege granted by this article and the remedy of provisional seizure conferred by article 285 of the Code of Practice depend necessarily upon the relationship of lessor and lessee or landlord and tenant. When there is no contract, express or implied, between the owner of a building and one who occupies it, there exists no privilege in favor of the owner on the goods of the occupant for the payment of an alleged debt for rent and a provisional seizure thereof cannot be sustained. In order to sustain such claim and such writ, plaintiff must prove that there was a contract of letting and hiring.

In Blanchard v. Davidson, 7 La. Ann. 654, it was held that where a claim for rent is based upon mere occupancy of defendant, "without proof that this occupancy was as lessee, or sub-lessee, a provisional seizure cannot be sustained," and in Bisland v. Provosty et al., 14 La. Ann. 169, 175, the court said:

"It is therefore evident that there is no contract of letting and hiring between the parties, and, as a consequence, no privilege on the crop."

In Jordan v. Mead, 19 La. Ann. 101, the court said:

"The mere occupancy of property does not necessarily imply the relation of lessor and lessee, and thus give rise to the landlord's lien and privilege," citing Fisk v. Moores, 11 Rob. 280, Blanchard v. Davidson, 7 La. Ann. 654, and Haughery v. Lee, 17 La. Ann. 22.

See, also, Gleason & McManus v. Sheriff et al., 20 La. Ann. 266.

"To the contract of lease, as to that of sale, three things are absolutely necessary, to-wit: the thing, the price, and the consent." Civ. Code, art. 2670; Jordan v. Mead, supra; Caldwell v. Turner, 129 La. 19, 55 So. 695.

3. Plaintiff alleges, and the lease contract attached to and made part of the petition shows, that the property was leased to William Wolff and that the same was renewed by his heirs. Plaintiff was therefore the lessor and Wolff or his heirs were the lessees. It is alleged, however, that the lease was taken by Wolff for the use and benefit of a commercial firm composed of William Wolff, Sam Zipkes, and Joe Zipkes, doing a mercantile business under the name of "The Grand Leader," and that said commercial firm and not Wolff was the real lessee.

■ Conceding without holding that plaintiff's allegations sufficiently set out a contractual relation between him and the commercial firm composed of William Wolff, Sam Zipkes, and Joe Zipkes, it does not follow that the defendants in this suit were plaintiff's lessees at the time this suit was filed, as it affirmatively appears from the petition and the documents attached and made part thereof that Wolff, a member of that firm, died prior to September 12, 1928, and the suit was not filed until August, 1931. The original partnership, to which plaintiff alleges he leased his property, was at an end when Wolff died. "Every partnership ends of right by the death of one of the partners unless an agreement has been made to the contrary" (Civ. Code, art. 2880), and there is no allega-

tion that there was any "agreement to the contrary" in this case.

It is alleged that there was another partnership formed composed only of Sam and Joe Zipkes, who continued to operate under the name "The Grand Leader" and to occupy the property, and this suit is brought against the latter partnership and the individual members thereof. There is nothing in the petition to show that plaintiff had any contractual relations with the new partnership. There is no allegation that the lease was assigned to the new partnership or to its members individually or that it or they assumed any obligations thereunder.

■ The fact that the two Zipkes were members of the first partnership does not make them plaintiff's tenants. Under plaintiff's own theory, the lease was made to the partnership, and a commercial partnership is a distinct, legal entity and is entirely separate from the individuals who compose it. Toelke v. Toelke, 153 La. 697, 96 So. 536; Newman v. Eldrige, 107 La. 315, 31 So. 688. Commercial partners are bound in solido for the debts of the partnership. But the original partnership to which this lease is alleged to have been made owed plaintiff nothing. It was dissolved by the death of Wolff nearly three years prior to the institution of this suit, and plaintiff alleges that all monthly installments of rent, except one, had been paid when he filed suit.

■ 4. It appears from the petition that the new partnership, that composed of the two Zipkes, was occupying and using plaintiff's building at the time suit was filed, that one month's rent was due, and that the occupants were about to move their goods therefrom.

But plaintiff does not allege and there is nothing in the petition which leads to the inference that there was ever any contractual relations between him and the defendants or that the relationship of lessor and lessee ever existed between them. At most, all that can be inferred from the petition is that defendants were mere occupants of plaintiff's building, and as we have pointed out, it has been repeatedly held that "proof of occupation alone is insufficient to establish the relation of lessor and lessee."

It is alleged in section 5 of the petition "that up until the 15th day of July, 1931, the monthly installments of said rent have been paid," and, in section 6, that demand therefor had been made without avail. But there is no allegation that the rent was paid to plaintiff by the present occupants or that demand therefor was made on them. For aught we know from a most careful reading of the petition, the rent may have been paid to plaintiff by the heirs of Wolff, who renewed the lease and who were, according to the record, the lessees and that these defendants were mere occupants of the premises under some undisclosed arrangement with said heirs.

5. It is alleged in section 10 of the petition that William Wolff is dead and that "said commercial partnership is now composed of Joe Zipkes and Sam Zipkes * * * and that said lease was renewed by and for the use and benefit of the said commercial partnership and the said Joe Zipkes and Sam Zipkes, who have ratified, approved, accepted and operated under and pursuant to said lease and the renewal."

The notice of intention to renew the lease is in writing, and is attached to and made part of the petition. By its precise terms the lease was renewed, not by the partnership composed of Joe and Sam Zipkes, but by the heirs of Wolff, deceased, who is named in the lease contract as the lessee. This instrument renewing the lease having been written into the petition must be given effect, and giving it effect we know that the lease was not renewed by these defendants. Furthermore, defendants had no right to renew the lease. They were not the lessees and the right to renew was granted to the lessee, Wolff.

There is nothing in the petition to show that plaintiff at any time dealt with these defendants as lessees. It is alleged that rent was paid to him, but the petition does not state from whom he received it. As Wolff was the lessee named in the contract and as the lease was renewed by his heirs, we must assume that plaintiff looked to them for his rent and that he received it from them.

As to the allegations that the lease was renewed for the use and benefit of defendants and that they "ratified, approved, accepted and operated under and pursuant to said lease and to renewal," we need say only that they do not show privity of contract between plaintiff and defendants. A reasonable interpretation of these allegations, construed with others and with the attached documents, is that the heirs of Wolff renewed the lease for the use and benefit of defendants as subtenants or some other arrangement not disclosed. These allegations are not sufficient to link plaintiff with defendants in a contractual way.

6. It is suggested, and with some show of reason, that the petition, construed as a whole, is sufficient at least to show that defendants were subtenants of the heirs of Wolff and inasmuch as it is alleged that one month's rent was due plaintiff, the seizure should be sustained to that extent if no further.

The answer to the suggestion is that even if it be true that defendants were sublessees under the heirs of Wolff and though it be true that one month's rent was due plaintiff, there is no allegation that defendants were due the lessee any amount. If they were not, their goods were not subject to the lessor's lien.

Under the Code and the settled jurisprudence of the state, the lessor's right of pledge "includes, not only the effects of the principal lessee or tenant, but those of the undertenant, *so far as the latter is indebted to the principal lessee, at the time when the proprietor chooses to exercise his right.*" (Italics are the writer's.) Civ. Code, art. 2706; Tulane Improvement Co. v. W. B. Green Photo Co., 124 La. 619, 50 So. 601, and authorities there cited.

The fact that a lessee is in arrears for rent does not necessarily render the property of the sublessee found in the leased premises subject to seizure for the rent due by the principal lessee.

There is no contractual tie between a lessor and a sublessee. Audubon Hotel Co. v. Braunnig & Boettler, 120 La. 1089, 46 So. 33, 124 Am. St. Rep. 456.

The original-petition sets out no cause of action.

7. The amended petition was filed on November 17, 1931, over defendants' objection that it came too late.

The general rule is that amendments are favored and should be allowed provided they do not alter the substance of the demand. James v. City of New Orleans, 151 La. 480, 91 So. 846; Tremont Lbr. Co. v. May, 143 La. 389, 78 So. 650; Wolff v. Hibernia Bank & Trust Co., 161 La. 348, 108 So. 667.

Whether this supplemental and amended petition should have been allowed if this were an ordinary suit, and whether the petition as amended sets out sufficient grounds for the seizure of defendant's property, are not the serious questions with which we are confronted. The question is whether a plaintiff, who procures the issuance of a writ of provisional seizure and thereby causes the defendant's property to be seized under a petition which sets out no valid grounds for the issuance of such writ and for the seizure of the property, can, by amending his pleadings after exception of no cause of action and motion to dissolve have been filed and while they are pending, maintain the original invalid writ and seizure?

Our opinion is that he cannot. The right of a lessor to provisionally seize the property of the lessee and thereby oust him, temporarily at least, of possession and disrupt his business, is a harsh remedy and has legal sanction only because the lessor has a pledge on the property of the lessee for the payment of his rent. This right to seize arises only in cases where there is in law a right of pledge, and there can be no right of pledge and no privilege unless there exists the relationship of landlord and tenant or lessor

and lessee between the seizing creditor and the seized debtor.

Where such relationship does in fact exist and is made known to the court by the pleadings, the court is authorized, under certain conditions, to enter an order, without a hearing, commanding the proper officer to provisionally seize the property of the alleged debtor. The right to such an order, and writ and the right to seize, are necessarily predicated upon the legal proposition that there exist between the plaintiff and defendant a legal tie binding them together as lessor and lessee, and where an order and writ are issued without a prima facie showing that such legal tie does exist, the order and the writ are invalid and a seizure made thereunder falls. This prima facie showing must necessarily be set out in the petition which is the basis for the order and writ.

The petition of an owner of property who seeks to have provisionally seized the property of one who is an occupant thereof, but which does not set out the relationship of lessor and lessee between himself and the occupant, discloses no cause of action. It is so fundamentally defective that no judgment thereon could be pronounced. Legally speaking, it is no petition at all and most assuredly confers upon the plaintiff no right to the writ, and it follows that an order for a writ in such cases is erroneously issued.

Defendants in the instant case excepted to plaintiff's petition on the ground that it set out no cause for the issuance of the writ and moved to dissolve on that ground. While this exception and motion were pending, plaintiff moved to amend his pleadings. It is very doubtful whether this petition could have been amended, for it has several times been held by this court that unless a cause of action is alleged, there is no suit and hence nothing to amend.

But if it be conceded that an amendment to plaintiff's original petition, which, as we have stated, set out no cause of action, could have been allowed so as to sustain the action, the filing of the amendment would have been the beginning of a new suit which could take effect only from the date of its filing, and would not relate back to the date of filing of the original petition. The rule is stated as follows in 1 C. J. § 413, p. 1159:

"An amended declaration or complaint which does not introduce a new cause of action relates back to the original commencement of the action, and cannot be considered as the beginning of a new action as of the date of the amendment; but where the amendment states a new cause of action, the action is not considered as commenced, as to the new cause until the amended declaration or complaint is filed. So if the original complaint states a good cause of action, although defectively, an amendment amplifying such statement will relate back; but if no cause of action is stated in the original complaint, an amendment stating for the first time a good cause of action is equivalent to the commencement of a new action as of the date of the amendment."

On the original hearing in the case of Tremont Lbr. Co. v. May, 143 La. 389, 78 So. 650, 652, Justice Provosty, speaking for the court, said:

"Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition

must be considered to be the beginning of the suit; the suit must be considered as dating only from such filing, and not from the filing of the original petition." 25 Cyc. 1308; 21 R. C. L. 587, § 136.

In all cases involving conservatory writs, where such writs issue under a petition or complaint so defective that it sets out no cause of action at all, the writ cannot be made valid by the subsequent filing of an amendment which does set out a cause of action; the amendment being the commencement of the suit. A conservatory writ is valid only in case the cause for which it is issued is valid, and that cause must of necessity be set out in the petition or complaint under which it is issued. The petition and the affidavit supporting it are the foundation of the writ. In order that a complainant may obtain a conservatory writ, he must allege and swear that those facts, circumstances, and conditions exist which the law requires for the issuance of such writs. If the facts alleged and sworn to do not, as a matter of law, warrant the issuance of such writ, then the writ must fall and no subsequent allegations setting out a different cause of action can save it.

This rule was first announced by this court in 1844. The case of Rhodes et al. v. Union Bank, 7 Rob. 63, involved the validity of a writ of injunction, and it was there held, to quote the second paragraph of the syllabus, that:

"After a motion to dissolve an injunction, plaintiff cannot, by filing an amended petition containing new allegations, cure a radical defect in his original proceedings, and thereby give effect to an injunction originally illegal."

The case of Kelly & Frazer v. Bently et al., 9 La. Ann. 586, decided ten years later, involved the legality of a writ of attachment. The court said:

"The petition makes no reference to the remedy of attachment, and is in that respect defective, according to the Article 243 of the Code of Practice. An amendment to cure the defect, came too late after the rule taken to quash the attachment," citing the Rhodes Case, supra.

The case of Bank of Natchez v. Moss & Co., 41 La. Ann. 227, 6 So. 25, is not exactly in point, but is persuasive. It was there held that: "The state of facts must be tested by the pleadings, as made at the date of the attachment, when the motion is to dissolve on the face of the papers." The court, in the course of its opinion, said:

"The motion to dissolve was filed on the 8th of November, 1887, and plaintiff's right to its attachment was therefore at issue when the amended petition was filed. It thence follows that it cannot be considered, if it contains any substantial averment on the issue of the attachment which was not to be found in the original petition."

The judgment of the court sustaining the exception and dissolving the writ and seizure was proper.

 Appellee moved in this court to amend the judgment by increasing the attorneys' fees from $250 to $500. We cannot do so. One attorney was called as a witness to appraise the value of the services of defendant's counsel in dissolving the writ. He said $250

was a reasonable fee. It is suggested that the witness had reference only to the proceedings in the trial court and did not contemplate an appeal. We cannot assume that.

Judgment affirmed, with all costs.

O'NIELL, C. J., and BRUNOT, J., dissent.