237 So.2d 669

**HANCOCK BANK**

**v.**

**W. R. ALEXANDER et ux.**

No. 50112.

June 29, 1970.

Rehearing Denied July 30, 1970.

Daniel J. McGee, Mamou, for defendant-appellant-applicant.

John Saunders, Mamou, for plaintiffs-appellees-respondents.

SUMMERS, Justice.

The Hancock Bank of Gulfport, Mississippi, instituted suit in Evangeline Parish

on July 25, 1968 against W. R. Alexander and his wife Barbara. The petition alleged that the bank was the holder of a promissory note drawn by defendants dated August 17, 1967 in the sum of $2,945.10, with 60 percent per annum interest and 33 percent as attorneys' fees, which was due and unpaid despite amicable demand. It was then alleged that the bank was entitled to have a 1965 Cadillac of defendants seized under a writ of sequestration on the ground that it was within the power of the defendants to conceal, dispose of, or waste the property or revenues therefrom, or remove the property from the parish during the pendency of the action.

The bank then prayed for judgment on the note, that a writ of sequestration issue and that "said sequestration be maintained, with recognition of plaintiff's lien and privilege arising therefrom, and independently, and that plaintiff's claim be paid in preference and priority over all other creditors upon the sale of the property seized." The petition was verified by the bank's attorney.

On the same day that suit was filed the Court ordered the issuance of a writ of sequestration conditioned upon the plaintiff bank furnishing bond with surety. Bond was forthwith furnished and the writ of sequestration issued immediately. On the authority of the writ thus issued the sheriff seized the Cadillac on August 2, 1968.

Then on August 18, 1968, the wife Barbara Alexander filed an answer and reconventional demand in which she admitted the signing of the note but otherwise denied the allegations of the bank's petition. She then alleged that the sequestration was unlawful and that the seizure and detention which resulted therefrom humiliated, embarrassed and distressed her, as a consequence of which she claimed $5,000 in damage. She further alleged that she was entitled to attorneys' fees in the sum of $1,500 for the dissolution of the writ of sequestration. On September 9, 1968 a joint answer and reconventional demand was filed by W. R. Alexander and his wife Barbara to the same effect. Accordingly, the bank was ordered to show cause on October 14, 1968 why the writ of sequestration should not be dissolved. Answer was filed by the bank denying the allegations of the reconventional demand on September 16, 1968.

Motion for summary judgment was then filed by the bank on October 23, 1968, which was fixed and tried on November 7, 1968. Trial of the motion was had on the basis of a letter from the bank confirming the balance due on the note to be $2,084.10, a deposition of W. R. Alexander previously taken on September 23, 1968, the original of the note sued upon and a deed of trust executed in Mississippi to secure the note.

On the basis of the pleadings, the documents and the deposition, summary judg-

ment was rendered in favor of the bank in the sum of $2,084.10 with 33 percent of the principal amount as attorneys' fees and with recognition of the bank's "special mortgage" on the Cadillac. It was further ordered that the Cadillac be sold to satisfy the debt, attorneys' fees and costs.

On January 9, 1969, the Cadillac was sold by the sheriff pursuant to the writ of sequestration already mentioned. Alexander, who as head of the community thereafter properly appeared as the defendant, moved for a devolutive appeal to the Third Circuit on February 6, 1969. There the judgment of the trial court was amended to reduce the principal amount to $2,002, and to reduce the amount of attorneys' fees to 15 percent as stipulated in the note. All interest on the note was disallowed on the ground that the 60 percent stipulated was usurious. As amended the judgment was affirmed. On Alexander's application we granted certiorari.

I.

Alexander's first complaint is that the writ of sequestration was patently unlawful, for it was not issued because the bank claimed "the ownership or right to possession of property, or a mortgage, lien, or privilege thereon" as required by Article 3571 of the Code of Civil Procedure.[1] And the requisite "grounds relied upon for the issuance of the writ," set forth in Article 3571, did not "clearly appear from specific facts shown by the petition" as required by Article 3501 of the Code.[2] Alexander also contends that the motion to dissolve the writ of sequestration was never tried, and he should have his day in court on this issue.

By a written order fixing it for trial, and according to the minutes of court, the "motion for summary judgment" was tried on November 7, 1968. Nevertheless, both the trial court and Court of Appeal granted the summary judgment, and, in addition, they maintained the writ of sequestration. In doing so, we assume they adjudicated the issues presented by the motion to dissolve without defendant Alexander's counsel being aware that the motion to dissolve was being consolidated with the motion for summary judgment.

In its petition the bank simply alleged an indebtedness on a promissory note, for it was not until the motion for summary

1. Code of Civil Proc. Art. 3571 provides: "When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property of the revenues therefrom, or remove the property from the

parish, during the pendency of the action."

2. Code of Civil Proc. Art. 3501 provides: "A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition ver-

judgment was tried that the deed of trust was referred to or produced in the record (even if that device could be considered as a "mortgage", "lien", or "privilege" as contemplated by Article 3571). Such an allegation, the Court of Appeal found, failed to fulfill the requirements of Articles 3501 and 3571 of the Code. In the Court's opinion, however, this defect could be cured by subsequent amendments, and such an amendment could be implied from the fact that the deed of trust, the note and Alexander's testimony in the deposition to the effect that he had executed the note and deed of trust on which he owed a balance of $2,002 had been introduced in evidence without objection.

Support for this position was said to be found in Article 1154 of the Code of Civil Procedure to the effect that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they *shall* be tried *in all respects* as if they had been raised in the pleadings \* \* \*" (Emphasis added.) Thus by not objecting to the introduction of the admission in the deposition or to the introduction of the deed of trust it is asserted the petition for sequestration was impliedly amended, or, as it is sometimes termed, "enlarged" to satisfy the failure to allege a mortgage as a grounds for the sequestration.

Article 1154 was said to overrule the earlier decisions holding that defects in the requirements for the issuance of conservatory writs could not be cured by subsequent amendment to validate the improvidently issued writ. *See, e. g.,* Terzia v. Grand Leader, 176 La. 151, 145 So. 363 (1932); First National Bank of Natchez v. Moss, 41 La.Ann. 227, 6 So. 25 (1889); Louisiana State Board of Medical Examiners v. Sloat, 91 So.2d 412 (La.App. 1956); Salter v. Walsworth, 167 So. 494 (La.App.1936); McMahon, Preliminary Statement, Book VII, Chapter 1, La.Code Civil Proc.; La.Code Civil Proc. Art. 3501, Comment.

▬▬▬ Notwithstanding the broad language of Article 1154, we note from the "Comment" of the redactors that the article was merely an attempt to codify the law theretofore expressed in the jurisprudence on the same subject. Furthermore, we are of the opinion that an exception is created to the general proposition stated in Article 1154 by Articles 3501 and 3571. These latter articles—dealing as they do with an extremely harsh remedy which is only extended where the formalities of the law have been strictly and literally complied with—will not permit an amendment once the defendant has moved to dissolve a con-

ified by, or by the separate affidavit of, the petitioner, his counsel or agent.
"The applicant shall furnish security as required by law for the payment of the

damages the defendant may sustain when the writ is obtained wrongfully."

servatory writ. *Cf.* Terzia v. Grand Leader, 176 La. 151, 145 So. 363 (1933). *See also* McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 51 (1934). Moreover, Articles 3501 and 3571 are explicit in their terms, whereas Article 1154 states a general rule. The former, therefore, prevail.

■ The result we reach is founded upon the evident meaning and intent of the codal articles discussed and the obvious logic and reason underlying the procedure involved in obtaining conservatory writs as distinguished from other proceedings. When the writ of sequestration issues ex parte upon the sworn allegations of the applicant, seizure of defendant's property takes place immediately without any advance notice to him. Since he is unaware of the proceedings until after the seizure, he is totally without power to prevent its accomplishment. If the seizure is unlawful all defendant can do is retain counsel and move for its dissolution and seek damages and attorneys' fees. Thus when the seizure takes place and the defendant employs counsel and moves to dissolve the sequestration his damage is already incurred. It is too late to "cure" these defects after the fact.

■ Strict application of the rules established for the issuance of conservatory writs has been uniformly required to by the Courts in the past. It is implicit in those remedies that they should not be availed of unless the conditions which permit them exist; that is to say, it is a prerequisite to their issuance that the proper grounds be alleged and sworn to.

■■ Therefore, we are of the opinion that the sequestration should not have been maintained. Rather, it should have been dissolved. But, since the minutes do not record that the motion to dissolve was ever tried, we shall remand to the lower court with instructions to try the motion to dissolve in keeping with the views herein expressed, at the same time according to defendant Alexander an opportunity to present evidence of the damage and attorneys' fees he claims as a result of the unlawful issuance of the writ of sequestration and the seizure.

II.

■ Summary judgment was properly granted herein for the sum of $2,002, the admitted balance due on the note, and the attorneys' fees which were stipulated in the note to be 15 percent, as found by the Court of Appeal. The only real defense Alexander asserts is that there was no admission by him that he owed this balance. Incidentally, he contends that the bank claimed the balance due to be $2,084.10 instead of $2,002, and, therefore, there was a genuine issue of fact to be resolved, and summary judgment should not have been granted. La.Code Civil Proc. art. 966 et seq. We are satisfied from a careful reading of the

record that Alexander admitted he owed the $2,002 and, therefore, as to that amount, there is no dispute. And the bank is not complaining about the $84.10 difference.

In view of the fact that the record contains a process verbal of a public sale of the Cadillac based upon the writ of sequestration, which we have found to be unlawfully issued, we shall reserve Alexander's right to proceed in the trial court to contest the public sale in the suit which the brief informs us Alexander has already instituted for that purpose or in an appropriate proceeding in accordance with law.

This latter conclusion is supported by the following from the "Comment" to Article 3510:

> Under the above article, the plaintiff is required to obtain judgment and the issuance of a writ of fieri facias or other process in a case in which a writ of attachment or of sequestration has issued; he cannot merely have the seized property sold to satisfy his claim without the formality of judgment and execution.

Here the bank had the property sold while merely sequestered without obtaining a writ of fieri facias and complying with services, notices, etc., required by law. As a consequence defendant was denied the safeguards these formalities assure. *See* La. Code Civ.Proc. arts. 2293, 2331 and La.R.S. 13:4363.

For the reasons assigned, there is judgment in favor of the bank for $2,002, plus 15 percent as attorneys' fees.

It is further ordered that this matter be remanded insofar as the motion to dissolve the writ of sequestration is concerned. The trial court shall, on remand, adjudicate the issue presented by that motion in accordance with the views herein expressed, granting to defendant W. R. Alexander the opportunity to present evidence in support of his claim for damage and attorneys' fees as asserted in the motion to dissolve.

It is further ordered that the right is reserved to W. R. Alexander to contest by other proceeding the validity of the public sale of the Cadillac referred to herein.