313 So.2d 255 (1975)
Alfred W. GROGHAN
v.
Paul BILLINGSLEY et ux.
No. 6648.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
Rehearing Denied June 11, 1975.
Writs Refused September 12, 1975.
*256 Gordon Hackman, Boutte, for plaintiff-appellant.
Vial, Vial & Lemmon, Leon C. Vial, III, Hahnville, for defendants-appellants.
Before SAMUEL, STOULIG and BEER, JJ.
SAMUEL, Judge.
Plaintiff, Alfred W. Groghan, filed suit against defendants, Mr. and Mrs. Paul Billingsley, demanding among other things their eviction from a house owned by him in Willowdale Subdivision, St. Charles Parish, Louisiana, fair rental value for the premises at the rate of $400 per month, *257 $2,000 in damages for depreciation of the house by virtue of defendants' occupancy thereof, forfeiture of a deposit made in connection with a contract to sell the house and lot in question, payment of a real estate agent's commission of $1,233.84, $3,500 attorney's fees, compensation for extra work allegedly performed by plaintiff in the sum of $3,850, and damages for trespass in the amount of $2,500.
The defendants answered, denied the allegations of the petition, and reconvened for various items of special damages totaling $6,226.99, a refund of the $2,000 deposit together with an additional $2,000 as a penalty, and an additional $3,500 for attorney's fees. The basis for the reconventional demand was the alleged defective and incomplete construction of the house plaintiff had agreed to build on his lot for defendants, after which both the house and lot were to be sold to them. Defendants aver that as a result of the defective workmanship they were unable to obtain conventional financing as provided in the contract to sell thereby entitling them to the damages claimed.
Plaintiff's answer to the reconventional demand avers he could not complete construction because of various defendant change orders, the unavailability of the house because it was locked and inaccessible after the defendants moved in before completion, and that the failure to obtain conventional financing was due to contrivance between them and the lending agency.
After a trial on the merits, there was judgment awarding plaintiff $1,100 for rent, awarding defendants $817.99 for expenditures made by them for curtain rods, draperies, a deposit on a cook-top unit, a medicine cabinet and light fixtures (all of which remained in the house), ordering both parties to direct the holder of the purchase deposit to return it,[1] rejecting all other claims, and ordering each party to pay his own cost.[2] Both plaintiff and defendants have appealed.
Some of the facts are not in dispute. On May 20, 1972, the parties signed a contract to sell and purchase a lot in Willowdale Subdivision, Luling, Louisiana, and a house to be constructed by the plaintiff-seller in accordance with plans and specifications made part of the contract. The purchase price was $41,128, and the sale was conditioned upon the ability of the purchaser to obtain conventional financing.[3] The completion date was scheduled for November 21, 1972. In pertinent part the standard form real estate buy-sell contract called for a deposit of $2,000 by the purchaser with the real estate agent and provided that in the event the purchasers failed to comply with the agreement within the time specified, the seller had the right to declare the deposit forfeited, and that in the event the seller so failed to comply, the purchaser had the right to the return of the deposit plus an equal amount to be paid as penalty by the seller. The contract also provided that either party who failed to comply became obligated to pay all fees and costs incurred in enforcing collection and damages. Annexed to this contract were the plans and specifications according to which the house was to be built.
We note this case does not involve the normal construction contract nor, for the reasons shown below, are we presented with the question of a contractor's substantial performance and the establishment of the necessary cost to remedy defects left by him.
*258 The evidence produced by the parties is quite lengthy. However, it is not necessary to engage in a detailed recitation of the complaints involved with regard to the defective construction. It suffices to say the evidence produced both by plaintiff and defendants convincingly shows the construction was extremely faulty and this faulty construction eventually resulted in the inability of the defendants to obtain conventional financing, a primary condition of the contract.
Plaintiff introduced an estimate by Earl J. Vicknair, the president of a local contracting firm, which established the cost of repairing most of the defective construction at $6,299. In addition, Vicknair refused to estimate the cost of alignment of certain walls and alignment of the front entry. He would only agree to undertake repair of these items on a cost plus 15% basis. Vicknair's testimony substantiated his written estimate.
Also introduced into evidence were estimates and testimony by Allen J. LeBlanc, a field appraiser for the lending agency which eventually refused to honor its commitment for conventional financing for the defendants. LeBlanc testified that as of May 23, 1972, based on the plans and specifications submitted by the plaintiff, he estimated the fair market value of the projected house and lot at $41,000. However, following his last inspection of the house and because of the defects which were apparent to him from that inspection, he lowered his estimate to $37,000.
The inspections by Vicknair and LeBlanc revealed a sag or dip in the roof, walls which were not plumb, poorly hung wallpaper, improperly finished woodwork and sheetrock, together with defective installation of kitchen cabinets, a stove hood vent and a vanity top. There was also a problem with the alignment in appearance of the front entry to the premises. On January 9, 1973, a representative of the lending agency notified defendant that the defects described prevented it from granting a permanent loan using the house as security.
Apparently with the knowledge that the loan would not be secured, plaintiff filed this suit on January 5, 1973. He requested and obtained the eviction of the defendants from the premises. Defendants vacated the premises on January 20, 1973 after having lived there since October 1, 1972. The trial court awarded plaintiff compensation for the occupancy of the house based upon a three and two-third (32/3) month period at the rate of $300 per month. Defendants argue this award is in error.
While somewhat vague, the evidence establishes defendants occupied the house on October 1, 1972 with the implied consent of the plaintiff. There was never an agreement as to a rental and the basis for the trial court's award is essentially the testimony of the plaintiff.
Mere occupancy of a building does not of itself imply the relationship of lessor and lessee.[4] A lease is a contract by which one party gives to the other the enjoyment of a thing at a fixed price.[5] As in the contract of sale, there are three absolutely essential elements to a lease: the thing forming the subject matter of the contract; the price for the enjoyment of the thing; and the consent or agreement of the parties.[6] There can be no contract of lease in the absence of a stipulation or agreement between the parties as to the amount of rent to be paid.[7]
*259 In the present case, the trial court's judgment awarded the sum of $1,100 for rent. However, a reading of its reasons for judgment makes it clear the court's award was based upon fair market rental value of a house of the nature which defendants occupied; it based its award in part upon a concession by the defendants that some amount was owed. As compensation for occupancy without a lease can be recovered on a quasi contract or quantum meruit basis,[8] we cannot say that an award for rent at the rate of $300 per month for a building valued variously between $37,000 and $41,000 is excessive.
It is also urged the trial court committed error by not awarding defendants the total amount of their out-of-pocket expenses. The court concluded that from defendants' total expenditure of $1,362.99, they should be reimbursed the sum of $157 for curtain rods, $415 for draperies, $20 for a deposit on a cook-top unit, $22 for a medicine cabinet and $203.99 for light fixtures installed in the premises by them, a total of $817.99. There items remained on the premises after the defendants were evicted, and they inured to the benefit of the plaintiff. The court disallowed a claim for cleaning because this benefitted the defendants and not the plaintiff. Since the defendants took occupancy prior to completion of construction, the trial court did not commit error in refusing to compensate them for cleaning which might have been the obligation of the plaintiff only subsequent to completion of construction. In this case defendants knew they were taking possession in less than immactulate circumstances.
The trial court was also correct in refusing to reimburse defendants for insurance expended by them, since this also inured to their benefit. They were not the owners of the building, they did not have an insurable interest therein, and it is highly doubtful that they could have had recovery for damage to plaintiff's building. Any amount of insurance premiums applicable to the defendants' personal belongings obviously was solely for their benefit and could not be charged against plaintiff.
The final issue is the disposition of the $2,000 damage deposit. The trial court found as a fact that the defendants were precluded from obtaining financing because of plaintiff's defective workmanship. As has been pointed out, the contract specifically provided that the sale was conditioned upon the ability of the defendants to obtain conventional financing. While a tentative commitment, satisfactory to the parties, was obtained predicated upon the plans and specifications of the projected house, plaintiff's defective workmanship resulted in the lending agency's refusal to honor its tentative commitment because the faulty construction diminished the value of its security. Under these circumstances, the condition contained in the contract to sell which predicated the sale upon the ability of the purchaser to obtain conventional financing was not fulfilled because of plaintiff's fault.
A provision in a contract to sell immovable property making the sale conditioned upon the ability of the purchaser to borrow upon the property as security is a suspensive condition[9] which ordinarily prevents execution of the contract until the condition is fulfilled.[10] A party whose obligation depends upon such a condition may not rely on non-performance therewith as a defense when the condition was not fulfilled because of his fault.[11] In such a case, the condition is waived and the law deems it as having been fulfilled under Civil Code Article 2040,[12] which reads:
"The condition is considered as fulfilled, when the fulfillment of it has *260 been prevented by the party bound to perform it." LSA-C.C. Art. 2040.
As fulfillment of the suspensive condition in the instant case was prevented by the fault of the plaintiff, defendants are entitled to the return of their $2,000 deposit together with an equal sum as a penalty under the contract. For the same reason the defendants are entitled to attorney's fees under the contractual provisions. Our review of the record indicates substantial work was performed by defendants' counsel, and an award of $1,750 would be appropriate.[13]
For the reasons assigned, the judgment appealed from is amended by additionally awarding to the defendants and against the plaintiff the sum of $3,750, which amount consists of the $2,000 deposit penalty and $1,750 attorney's fees, together with legal interest thereon from date of judicial demand until paid. As thus amended, and in all other respects, the judgment appealed from is affirmed.
Amended and affirmed.
NOTES
[1] The real estate agent holding the deposit was not made party to this proceeding. However, no one objects to the procedure used by the trial court in its judgment, and the evidence reflects that the holder of the deposit is willing to comply with the court's ruling. Consequently, the issue of nonjoinder is not before the court.
[2] The trial court also ordered cancellation of a notice of lis pendens.
[3] The contract is vague in that the blanks for insertion of the terms as to a cash down payment and the amount of the conventional financing were left blank.
[4] See Terzia v. The Grand Leader, 176 La. 151, 145 So. 363; Jordan v. Mead, 19 La. Ann. 101; Blanchard v. Davidson, 7 La.Ann. 654; Faroldi v. Nungesser, La.App., 144 So.2d 568; Weaks Supply Co. v. Werdin, La.App., 147 So. 838.
[5] LSA-C.C. Art. 2669.
[6] LSA-C.C. Art. 2670; Caldwell v. Turner, 129 La. 19, 55 So. 695; Faroldi v. Nungesser, supra, footnote 4; Myers v. Burke, La.App., 189 So. 482.
[7] LSA-C.C. Art. 2671; McCain v. McCain Bros., 165 La. 884, 116 So. 221.
[8] Faroldi v. Nungesser, supra, footnote 4.
[9] Harvey v. Riedlinger, La.App., 17 So.2d 60.
[10] LSA-C.C. Art. 2043.
[11] George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28; Williams v. Cormier, La.App., 100 So.2d 307.
[12] Morrison v. Mioton, 163 La. 1065, 113 So. 456; Williams v. Cormier, supra, footnote 11.
[13] The matter was tried on three nonconsecutive days and the transcribed testimony is in excess of 500 pages. The fee awarded is exclusive of the eviction proceeding.