WILLIAMS, Judge.
This matter on appeal addresses the ranking of various creditors who have seized and claim a preference to the partnership interest of John Paul Pratt in Project Square 376, a Louisiana Partnership, which is being liquidated and is under control of a judicial liquidator. Commercial Bank and Trust [hereinafter “CBT”], appeals the district court’s finding that appel-lees, First Financial Bank, formerly First Homestead Federal Savings and Loan Association [hereinafter “First”] and Whitney National Bank of New Orleans [hereinafter “Whitney”] have priority to the funds held by the judicial liquidator representing Pratt’s interest in Project Square 376.
The basis for this appeal arises from liquidation proceedings instituted by Jarrell E. Godfrey, managing partner of Project Square 376, on April 4, 1981, against the partnership and its partners, Alfred A. Olinde, John Paul Pratt and Paul G. Reyes.
On November 22, 1982, District Court Judge Katz granted Godfrey’s demand and ordered that the partnership be liquidated and terminated in accordance with La.C. Civ.Pro. art. 2834 and La.R.S. 12:141, et seq. The court appointed David Goldstein as judicial liquidator of Project Square 376 and ordered him to proceed with the sale of partnership property and disbursement of partnership assets to the individual partners.
On March 8, 1983, CBT filed an unverified petition for a writ of attachment. CBT’s writ of non-resident attachment read as follows:
“PLEASE TO TAKE NOTICE, that by virtue of a writ of Non-Resident Attachment issued in the above mentioned suit, I have seized and taken possession of the following described property, to wit: against: JOHN PAUL PRATT, M.D. described immovable property located in this Parish:” (Property description omitted.)
The property described in the petition and writ was not owned by Pratt, individually, but rather, was owned by Project Square 376. Notice of the seizure was served on the curator-ad-hoc appointed to represent Pratt and notice was recorded in the Orleans Parish Mortgage records on March 16, 1983.
On March 24, 1983 and April 4, 1983, First and Whitney, respectively, obtained writs of attachment which were directed toward seizing Pratt’s partnership interest in Project Square 376. First and Whitney’s writs of attachment stated:
FIRST NOTICE OF SEIZURE
PLEASE TO TAKE NOTICE, That by virtue of a writ of RESIDENT AND/OR NON-RESIDENT WRIT OF ATTACHMENT in the above mentioned suit, I have seized and taken possession of the following described property to wit:
against: JOHN PAUL PRATT
1) The undivided interest of John Paul Pratt in and to that certain Louisiana partnership designated as ‘Project Square 376,’ more fully set forth in Articles of Partnership, and amendments thereto, recprded in M.O.B. 1218J2, foilio 384, M.O.B. 1218K, folio 406, and M.O.B. 1218L, folio 8, Orleans Parish, which said partnership owns the following described immovable property to wit:
(Property Description omitted.)
WHITNEY NOTICE OF SEIZURE PLEASE TO TAKE NOTICE, That by virtue of a writ of N.R. ATTACHMENT the above mentioned suit, I have seized and taken possession of the following described property to wit:
(1) The interest of John Paul Pratt, M.D. in Project Square 376, a Louisiana Partnership;
(2) The distributive share of John Paul Pratt, M.D. to the net assets of Project Square 376 through the liquidation of *923 said partnership in judicial proceedings entitled and numbered ‘Jarrell E. God-frey, Jr. vs. Project Square 376, a Louisiana Partnership, Alfred A. Olinde, M.D., John Paul Pratt, M.D. and Raul Reyes, M.D., No. 81-5658, Division ‘B’, Civil District Court for the Parish of Orleans’.
Notice was served by both First and Whitney upon the judicial liquidator and upon all partners of Project Square 376. Both First and Whitney later obtained judgments against Pratt recognizing and maintaining the attachments in accordance with La.C.Civ.Pro. Articles 3510 and 3511.
During the liquidation of the partnership, a buyer was found to purchase the immovable property owned by the partnership. At this point it was discovered that CBT’s writ was issued by virtue of an unverified petition which apparently attached immovable partnership property, thus presenting an impediment to the sale of the property.
Pratt thereafter filed a rule on April 29, 1983, to dissolve CBT’s attachment. CBT obtained leave of court from Judge Ganu-cheau on May 12,1983, to file a supplemental and amending petition seeking to add verification and amend the property description contained in the writ to describe the attachment as Pratt’s partnership interest.
The liquidator, Goldstein, then intervened on behalf of the partnership in Pratt’s rule to dissolve CBT’s writ of attachment so as to resolve any disputes in the sale of the property. A consent judgment on the intervention and rule to dissolve the writ was entered on May 25, 1983, before Judge Ganucheau, by agreement of Godfrey, Pratt, CBT and the liquidator, wherein the petition for intervention and the rule to dissolve were continued. Neither First nor Whitney were parties to the consent judgment. The consent judgment stated that the previously issued attachment was not an attachment of the partnership real estate as described in the original and supplemental petitions, but rather, it was an attachment of Pratt’s partnership interest in Project Square 376.
The property was subsequently sold and the proceeds placed in the registry of the court pending the resolution of the ranking of the creditors of Pratt.
Judge Katz rendered a judgment on a Rule to Rank Creditors of John Paul Pratt on February 23, 1984. In his decision, Judge Katz found that First had preference to Pratt’s partnership share in Project Square 376 and that any remaining funds were to be distributed to Whitney. He further held that First and Whitney properly perfected a security interest against the partnership interest of Pratt in Project Square 376 by the valid execution of writs of attachment with final judgments in favor of First and Whitney maintaining the attachments as required under La.C.Civ. Pro. arts. 3510 and 3511.
CBT, on the other hand, was found to be an ordinary creditor of Pratt because its writ of attachment was defective. The court found that the March 8, 1983, seizure which purported to attach the property of Pratt was defective, as the property described in the writ of attachment was not owned in whole or part by Pratt, but instead was the property of Project Square 376.
From the trial court’s. denial of CBT’s motion for a new trial, new counsel on appeal assigns these four specifications of error: (1) Judge Katz had no jurisdiction to determine the merits of CBT’s writ of attachment; (2) The trial court erred in holding that the consent judgment was not a final judgment recognizing that the writ of attachment seized the partnership interest of Pratt; (3) It was error to hold that failure to serve the liquidator with CBT’s writ of attachment was a fatal flaw; and (4) It was error to hold that the action of the liquidator in entering into the consent judgment was not res judicata as to all creditors of Pratt.
LACK OF JURISDICTION
In its first specification of error, CBT contends that Judge Katz had no jurisdiction over the ranking of Pratt’s creditors until a full determination of the validity of *924 CBT’s attachment had been decided by Judge Ganucheau.
The Louisiana Civil Code provides that a partnership is liquidated in the same manner and according to the same rules that govern the liquidation of corporations. La.C.C. art. 2834. The court appoints a judicial liquidator who “shall proceed with the liquidation of the affairs of the corporation (or partnership) under the supervision of the court.” La.R.S. 12:146(B). The liquidator, while under the court’s supervision, may “do any and all things which may be necessary, proper, or convenient for the purpose of liquidating the corporation.” La.R.S. 12:145 (C)(16).
Judge Katz, in ruling on Godfrey’s demand, ordered the commencement of liquidation proceedings on November 22, 1982, in accordance with La.R.S. 12:146. As provided for under the statute, the liquidation of Project Square 376 remained subject to the court’s supervision.
It was within Judge Katz’s authority to resolve the conflicting claims asserted by CBT, First and Whitney, by ranking the creditors pursuant to the rule filed by Gold-stein. In doing so he recognized the priority of those creditors who had executed valid writs of attachment seizing Pratt’s partnership interest and who had secured judgments maintaining their attachments, thus denying the validity of the priority claim of CBT. We find no error in his ruling, and agree that the consent judgment on which CBT relies cannot be enforced against First and Whitney who were not parties to its execution.
AMENDING PETITION FOR WRIT OF ATTACHMENT
CBT maintains that its writ of attachment, although defective in form when executed relates back to the March 16, 1983, seizure because it was cured by the amending petition adding verification and the consent judgment clarifying that the writ attached Pratt’s interest in Project Square 376. The “relates-back” doctrine allows the creditor who seizes property under a writ of attachment or sequestration to acquire a privilege from the time of seizure if he acquires a judgment maintaining the attachment or sequestration. La.C. C.P. art. 3511, Board of Supervisors v. Hart, 210 La. 78, 26 So.2d 361 (1946). Pertinent here is La.C.Civ.Pro. art. 3501 which provides:
“A writ of attachment or of sequestration shall issue only when the nature of the claim and amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.”
The Supreme Court has held that because an attachment is considered an extremely harsh remedy, the formalities must be strictly observed. Thus amendment to the original petition is precluded once the defendant has moved to dissolve the writ, Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970). The Court’s reasoning:
“The result we reach is founded upon the evident meaning and intent of the codal articles discussed and the obvious logic and reason underlying the procedure involved in obtaining conservatory writs as distinguished from other proceedings. When the writ of sequestration issues ex parte upon the sworn allegations of the applicant, seizure of defendant’s property takes place immediately without any advance notice to him. Since he is unaware of the proceedings until after the seizure, he is totally without power to prevent its accomplishment. If the seizure is unlawful all defendant can do is retain counsel and move for its dissolution and seek damages and attorneys’ fees. Thus when the seizure takes place and the defendant employs counsel and moves to dissolve the sequestration his damage is already incurred. It is too late to ‘cure’ these defects after the fact.”
Hancock Bank, supra, 237 So.2d at 672. Once the rule to dissolve the writ of attachment was filed on April 29,1983, it was too *925 late for CBT, by a subsequent act on May 12, 1983, to add verification in compliance with article 3501. Assuming arguendo that the amendment could cure the defects in the original petition, it could not be made valid to relate back under art. 3511, if such a retroactive ranking would prejudice the security rights of First and Whitney who legally recorded and perfected their attachments prior to the subsequent amendment. A re-issuance of the writ in accordance with the prescribed formalities is mandated when a writ has been improvidently issued. Babers v. Jolly, 107 So.2d 81 (La.App. 2d Cir.1958); Eden v. Johnson, 176 So.2d 476 (La.App. 2d Cir.1965); See Johnson, Attachment and Sequestration: Provisional Remedies Under the Louisiana Code of Civil Procedure, 38 Tul.L.Rev. 1, 8 (1963).
Apart from the writ being defective as to form, the writ also failed to properly describe Pratt’s partnership interest in Project Square 376. CBT relies upon the consent judgment, which properly describes Pratt’s interest, as the basis to secure a preference. This Court has held that a judgment obtained by the consent of all parties to a suit gets its binding force and effect from the consent the parties give, rather than from adjudication by a competent court. City of New Orleans v. VanLangendonck, 433 So.2d 432 (La.App. 4th Cir.1983); Ritchey v. Azar, 383 So.2d 360 (La.1980). In effect, a consent judgment is a bilateral contract between the parties and must be based on consent, an essential element of every contract. Chaisson v. Chaisson, 454 So.2d 890 (La.App. 4th Cir.1984); Parkerson v. R-5, Inc., 305 So.2d 592 (La.App. 4th Cir.1974), writ den., 309 So.2d 679 (La.1975).
CBT has a valid judgment rendered by a competent court, but it is binding only on those parties who consented to the judgment. In order for the consent judgment to have the legal effect for which CBT argues, the joinder of First and Whitney would have been necessary whereby they could have agreed to subordinate their claims in favor of CBT. Without their concurrence, the consent judgment cannot serve to prejudice their rights as secured creditors. Because of the foregoing reasons, we do not find it necessary to address appellant’s remaining specifications of error.
The judgment of the trial court is affirmed. All costs to be borne by appellant.
AFFIRMED.