BEER, Judge.
Failure to pass an act of sale pursuant to the terms of a written agreement precipitated this action by the allegedly thwarted purchasers, Kenneth and Deborah Ducote, against owner, Albert Katz, and realtor, Patio Realty, Inc. The Ducotes sought return of their deposit, an award of an equal amount as a penalty, and legal fees.[1]
The Ducotes’ interest in certain architectural features of the house they sought to purchase, considered with the warning of friends who had heard of instances of such features being ripped out of homes just before their being sold, led the Ducotes to specify in the agreement to purchase that all mantels and lighting fixtures would be included, and that “Purchaser has right to inspect property immediately prior to act of sale.”
*1322 On May 11, 1976, the date originally set for the passage of the act of sale, the Du-cotes were advised (by the seller’s representative) of an encroachment on adjoining property, and, in accordance with the agreement, seller invoked a 45-day extension of the deadline for passage of act of sale because of the necessity of curative work.
The Ducotes heard nothing more from the owner or the realtor, or the homestead notary before whom the act of sale was to be passed, until Saturday, June 26, 1976, when they received a letter via certified mail from Bernard Freedman, president of Patio Realty, Inc., advising that the passage of the act of sale had been set for 11:00 a. m. on the following Monday, June 28 — the last day of the 45-day extension period.
Patio Realty’s employee, Ray Tolbert, contacted Mrs. Thelma Septh, the tenant of the Soniat Street property, on Saturday to arrange for an inspection by the Ducotes on Monday morning just prior to the act of sale. However, Mrs. Septh advised Tolbert that a Monday morning inspection was impossible. Tolbert advised Freedman of this development, and Freedman, in turn, contacted Maurice Katz, who acted as agent for the seller, Albert Katz. According to Freedman’s testimony, he explained to Maurice Katz that the contract called for an inspection of the premises immediately prior to the act of sale and asked his assistance in arranging the same. He testified, “At that point I turned it over to him.”
Maurice Katz contacted the tenant, Septh, and he, too, was refused a Monday morning inspection appointment. Thus, on Saturday evening, Katz went to the Ducote residence to propose some alternatives to the Monday morning inspection. On this issue, significant conflict exists in the record. Katz testified that he offered three alternatives: an inspection on Sunday; resetting of the act of sale for a later hour on Monday preceded by an early afternoon inspection; or a written extension of the deadline for passage of the act of sale. Katz claims the Ducotes would accept none of his alternatives and told him then and there that they refused to take title. The Ducotes, on the other hand, contend that Katz did not suggest a rescheduling of the act of sale for a later hour on Monday and that a Sunday inspection was not acceptable to them as it was too much in advance of the sale to suit the purpose for which the inspection was intended.
Notwithstanding the failure to resolve the inspection issue, on the morning of Monday, June 28, 1976, at 9:00 a. m., Mr. and Mrs. Ducote sought but were denied entry into the Soniat Street premises for inspection purposes. They were told by a man who answered the door (apparently tenant’s son) that they could not come in. Thereafter, at 11:00 a. m., all parties appeared at the office of Robert Jeffers, the notary who was to pass the act of sale,[2] whereupon the Ducotes’ attorney hand delivered a letter demanding return of the deposit, an equal amount as a penalty, and legal fees, on the grounds that seller had failed to comply with his obligation.
By reconventional demand, the appellants contend that the Ducotes willfully, arbitrarily and capriciously refused their reasonable offers to set up an alternate time to inspect the house and breached their agreement. Patio Realty seeks to recover a commission of $1,215.00 with interest and attorneys’ fees, and Albert Katz seeks to recover damages in the amount of the deposit, plus interest, costs and attorneys’ fees.
Trial of the case resulted in judgment for plaintiffs, Kenneth and Deborah Ducote, against Albert Katz in the amount of $3,025.00 (deposit plus $1,000 attorneys’ fees) plus interest and costs, and against Patio Realty, Inc., in the amount of $2,025.00 plus interest and costs.
In written reasons for judgment, the trial judge found that the language of the agreement to sell reserving the right to inspect immediately prior to the act of sale was intended to permit inspection on the same *1323 day as the act of sale, and since the purchasers were told that they could not inspect on Monday, June 28, there was, then and there, a default which formed the basis of defendants’ liability. The court stated:
“When an Act of Sale is set for passage on the last day permitted by a contract, the risks inherent are obvious.
“The vendor had the obligation to permit, and arrange for the inspection of his property. He was unable to arrange for the inspection.
“The purchasers had no obligation to waive the inspection, or to extend the time for the act of sale.”
Appellants here contend that the trial court erred:
1. .In failing to find the notary and tenant were not under defendants’ control;
2. In failing to find that the refusal of the Ducotes to inspect on Sunday or to extend the contract was arbitrary and capricious;
3. In failing to find that “immediately prior to” could have meant the day before;
4. In failing to find that defendants had until sunset to meet their contractual obligations, according to La.Civ.Code art. 2057,[3] and that purchasers breached by walking out on the deal at approximately 11:00 a. m.; and
5. In ordering the return of $2,025.00 cash in spite of the fact that plaintiffs gave $1,500 in cash and a note for $525.
Guidelines for the interpretation of the inspection clause are found in La.Civ.Code arts. 1950 and 1956:
“Article 1950.
When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.”
“ Article 1956.
When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.”
The motivation for including an inspection clause was explained by Deborah Du-cote, as follows:
“(By Mr. Thomas)
Q. Now, this document was signed by you and your husband, is that correct?
A. Yes.
Q. On March 27th, 1976?
A. 1976. We explained to Mr. Tobort (sic) the conditions of the sale. We wanted to inspect the property immediately prior to the act of sale because we personally knew of cases where the mantle (sic) piece and lighting fixtures, et cetera, had been ripped out the night before this act of sale. A friend of ours told us this.
Q. In other words would that correspond to what is on line 4 of this document?
A. That’s not what Mr. Tobort (sic) suggested at first. We did not think it was significant enough, and we repeated the same day of the act of sale we wanted to inspect and he reworded it in the form you see here and we agreed with it.
Q. The words, ‘Purchaser has a right to reinspect the property immediately prior to the act of sale’?
A. That is right.” (Emphasis ours.)
Obviously, appellees’ reason for including the clause was their knowledge that an inspection on the day of the sale would assure them that all components of the house remained intact.
*1324 Appellants further contend, however, that the inspection clause was a sus-pensive condition and that their inability to fulfill because of the tenant’s refusal to permit inspection that Monday morning relieves them of their contractual obligation. La.Civ.Code art. 2021 defines “suspensive condition” as follows:
“Art. 2021. Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition . . ..”
However, the - facts as apparently found by the trial court established an obligation on the part of the seller to provide an inspection of the property just prior to the act of sale. The clause was inserted for the benefit of the purchasers, and its nonfulfillment had the effect of suspending their obligation but not that of the vendor. See: Groghan v. Billingsley, 313 So.2d 255 (La. App. 4th Cir. 1975), writ ref., La., 318 So.2d 46.
The meeting in the. notary’s office was attended by all parties. Upon Katz’ representation that he was prepared to proceed with the sale, a letter was presented him by counsel for the Ducotes. That letter stated, in pertinent part: “Because of your failure to keep your part of the agreement, on behalf of Mr. Ducote, I hereby demand payment of double the deposit, cost, and attorney’s fees.”
The action of the Ducotes, and the terms of the letter presented by their attorney clearly indicate that they were unwilling to proceed even if the inspection took place on Monday afternoon, with the act of sale to follow immediately thereafter. Under La. Civ. Code art. 2057, vendor had until sunset of June 28, 1976, to meet the inspection condition and pass the act of sale. Although the record establishes that a Monday morning inspection was not permitted by the tenant, appellants were preempted by the actions of the Ducotes and their attorney from attempting to set up an inspection later in the day. Appellees, in reliance on the advice of an unidentified man in the tenant’s apartment, acted precipitously in refusing title without allowing appellants some sort of final opportunity to provide the requisite inspection. Specifically, the putting in default of the vendor was insufficient under the circumstances.
Thus, as of the June 28th meeting in the notary’s office at 11:00 a. m., vendor had not met his obligation of arranging for an inspection, and was in no position to put purchaser in default, and, purchasers had expressed their categoric unwillingness to proceed with the sale even if an inspection were proffered. As of that time, both the agreement to purchase and the agreement to sell ceased to be enforceable and, under these circumstances, purchasers are entitled only to recover their deposit of $2,025.00. Accordingly, the trial court judgment must be set aside insofar as it awarded return of double the deposit and $1,000 attorneys’ fees.
Appellees (who have not answered the appeal) pray for an increase in the award of attorneys’ fees for time and effort expended in connection with the appeal.
We are without authority to consider such a demand by appellees, who have not answered the appeal. See, e. g., Dumond v. Mobile Insurance Co., 309 So.2d 776 (La.App. 3rd Cir. 1975); Mattox v. American Indemnity Co., 259 So.2d 79 (La.App. 4th Cir. 1972). Also, note Luna v. Atchafalaya Realty, Inc., 325 So.2d 835 (La.App. 1st Cir. 1976), and Audubon Coin and Stamp Co. v. Alford Safe and Lock Co., 230 So.2d 278 (La.App. 1st Cir. 1969).
The judgment of the Civil District Court for the Parish of Orleans casting Albert Katz jointly liable to plaintiffs in the amount of $2,025.00 and liable in solido for $1,000.00 in attorney’s fees is reversed and set aside as is that portion of the judgment which casts Patio Realty, Inc. jointly liable to plaintiffs in the amount of $2,025.00. Patio Realty, Inc. is, however, obligated to return to Kenneth J. Ducote and Deborah *1325 Ducote their cash deposit of $1,500.00 and the demand note executed by them in the amount of $525.00. All parties are to bear their own costs in the trial court and in this court.

REVERSED IN PART, AMENDED IN PART AND RENDERED.

. The standard form for an agreement to purchase or sell was used, which provides for return of deposit, payment of a penalty in an equal amount, and payment of legal fees and expenses where seller defaults.

. An act of servitude clearing title had been procured either on Friday, June 25, or on the same day as the rescheduled act of sale.

. Art. 2057 provides:
“Where a term is given or limited for the performance of an obligation, the obligor has until sunset of the last day limited for its performance, to comply with his obligation, unless the object of the contract can not be done after certain hours of that day.”