REDMANN, Judge.
The parties to this litigation used a printed form, drafted for use in sales of land (including existing buildings), to embody an agreement relative to a house in the process of being constructed on the builder’s land.
The builder-seller now appeals from a judgment which imposed upon him the printed form’s penalties for noncompliance by awarding the buyers the return of their deposit plus an equal amount' “as penalty” plus attorney’s fees (as well as the cost of light fixtures and a stove hood the buyers had supplied to the builder). We eliminate the penalty and attorney’s fees but otherwise affirm.
We agree that the builder did breach the contract. The house was “to be completed ready to move into for above price” and “Possession and occupancy [was to be given to] purchaser at passing of act of sale.” The trial judge interpreted these two provisions together to require the house to be completed for the time of the act of sale and we agree that that is their intent. The house was not completed for the February l, 1978 date provided by the contract. The parish building inspector noted several matters incomplete at that time. The parties agreed to an extension to February 13 and the act of sale was set for 4 p. m. At 10 a. m. February 13 the buyers found the house still incomplete. The builder said it would be completed by 3 p. m. At 3 p. m. they again met (with the buyers’ attorney and the parish building inspector) and the house was still incomplete, and could not be moved into, in that lack of “fire blocking” around the return duct to the central heater plenum constituted a fire hazard, and prevented final connection of utilities and thus prevented their moving in. (Improper roof bracing had also not been corrected.) The buyers refused to take title or allow further time for performance.
The building was so nearly complete that, if this were a simple building contract for a building to be completed on plaintiffs’ land, the doctrine of substantial performance would have allowed the builder to recover the contract price less the minor cost of completion. The radical difference is that here the builder owned the land and therefore his building upon his own land did not unjustly enrich plaintiffs, as the building upon another’s land enriches that other. The parties here made a contract providing that the builders were to have the house ready to move into at the time of the act of sale, and despite an extension of time after the first inspection by the parish building inspector and two more inspections by the buyers on the last day for the act of sale, the builder did not have the house ready.
Even Douglas Weber’s testimony that he had been informed by Fred Weber at the 4 p. m. time set for the act of sale that the *814 fire blocking and roof bracing (and other defects) had been corrected is contradicted by Fred Weber’s testimony that he finished at 5 or 6 p. m. Moreover, by 6 p. m. on a February 13 in Jefferson parish sunset has occurred, and thus defendants cannot say they did not breach even on the theory that C.C. 2057 allows until sunset to perform; see Ducote v. Katz, La.App. 4 Cir. 1978, 361 So.2d 1320.
Ducote is similar to our case in that there the seller’s nonfulfillment of a minor obligation (to afford an inspection) occasioned the buyer’s refusal to perform at the time set for the act of sale. Ducote held the buyer justified in refusing to perform, but denied penalty and attorney’s fees because there remained some hours before sunset during which the seller could have performed (although he did not in fact do so). We conclude that our buyers, too, were entitled to refuse to take title at 4 p. m., but because the sellers had until sunset for completion and act of sale, our buyers were not entitled at 4 p. m. to demand return of their deposit, much less penalty and attorney’s fees. On the other hand, as also in Ducote, the seller is not entitled to keep the deposit because he did not perform timely and his 4 p. m. tender of title was not a tender in compliance with the contract. We add that it is doubtful, in any case, that the parties intended that the penalty for the builder-seller’s refusal to sell should apply to his lateness by an hour in being prepared to sell The usual 10% deposit plus an agent’s usual commission of 6% would mean a 16% penalty plus substantial attorney’s fees, and the magnitude of the overall cost suggests the unreasonableness of ascribing to a builder the intent to pay that penalty for mere delay.
Amended to eliminate penalty and attorney’s fees; each party to bear his own costs.