569 So.2d 40 (1990)
BANQUE de DEPOTS
v.
Bozel Mineracao E. FERROLIGAS.
No. 90-C-1505.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
Writ Denied October 24, 1990.
*42 Richard M. Eustis, Charles A. Nunmaker, Kevin W. Wheeler, New Orleans, Richard Dillenbeck, New York City, Walker H. Drake, Jr., Chalmette, for relators.
Thomas N. O'Connor, Cynthia K. Berliner, Hale & Dorr, Boston, Mass., Peter J. Butler, Aubrey B. Hirsch, Jr., Vincent J. Booth, Locke, Purnell, Rain, Harrell, New Orleans, for respondents.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
We grant certiorari to consider relator's complaint that the trial court was in error in failing to dissolve the nonresident writ of attachment issued when this suit was filed.
Banque De Depots, a Swiss bank, (Bank) instituted these proceedings against Bozel Mineracao E Ferroligas (Bozel) in the Thirty Fourth Judicial District seeking a money judgment asserting numerous allegations that Bozel fraudulently misused and/or misapplied the Bank's funds. The Bank asserts that Bozel is a foreign corporation existing under the laws of Brazil, is not licensed to do business in Louisiana, and has no designated agent for service of process. Pursuant to the provisions of Code of Civil Procedure Article 3541(5), the Bank sought and obtained a nonresident writ of attachment wherein 1,300 metric tons of calcium silicon were seized. The calcium silicon was shipped by Bozel from Rio de Janerio to the port of New Orleans for transit to three purchasers, none of whom are located in Louisiana, or do business here. The order of seizure was signed on May 14, 1990, and the property was seized the same day at the facilities of Chalmette Slip in Arabi, Louisiana.
On May 25, 1990 Bozel filed a motion to dissolve the writ of attachment asserting three errors, namely that the verified petition was deficient, that Bozel was not the owner of the goods, and that the cargo was subject to bills of lading and thus La.R.S. 10:7-602 prevented their seizure.
In memorandum before the trial court, and in its application with this court, Bozel not only asserts the aforementioned three errors, but also argued that state court jurisdiction was lacking because of the non-existence of the required constitutional "minimum contacts," citing this court's decision in Dosfer Intercontinental Commercial and Investment, Inc. v. Amerwood Int'l, 468 So.2d 634 (La.App. 4th Cir. 1985) and the U.S. Supreme Court case of Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). However, Bozel did not file an exception to the jurisdiction.
The trial court dismissed Bozel's rule to dissolve the attachment and issued extensive reasons. Bozel seeks relief from this court.
Initially, we note that the only issue for our determination is whether the writ of attachment should be dissolved. No attempt has been made to serve Bozel personally or through the Long Arm Statute. The only basis for jurisdiction is the attachment pursuant to La.C.C.P. Art. 9. Because we conclude that the attachment is to be dissolved there is no need to discuss the jurisdictional issues.
The cargo seized was in transit to three non-Louisiana purchasers. Forty percent (455 metric tons) of the total shipment, represented by bills of lading nos. 71-80, was sold to Picklands Mather Sales Company *43 in Cleveland, Ohio (the Pickland cargo). The remainder of the cargo, represented by bills of lading nos. 70 and 81-94, was sold to Lakeside Metals and Petrochemicals of Geneva, Switzerland, with its ultimate destination to Odermath (USA), and Shieldalloy Metallurgical Corporation (the Lakeside cargo).
The record is clear that the entirety of the cargo was shipped under negotiable bearer bills of lading. With respect to the Pickland cargo, Bozel's bank in Brazil forwarded the bills of lading, and other documentation, to Society National Bank for collection from Pickland. The Lakeside cargo was handled in a similar manner. Payment for that cargo was by letters of credit issued by Banque Bruxelles Lambert. Neither purchaser paid for its cargo prior to the issuance of the attachment, although the record is unclear as to whether all of the Lakeside bills of lading were in the possession of the collecting bank.[1]
For the following reasons we hold that the trial court was in error and that the attachment was erroneously issued. We grant the relief sought, and dissolve the writ of seizure.
Most of the argument between the parties concerns the ownership of the cargo when it reached the dock in Chalmette. Bozel asserts that once the cargo was placed on the ship in Brazil title passed to the purchasers. In support they refer to numerous articles of Article 2 of the U.C.C. with respect to the shipping instructions designated as "F.O. B." and "C.I.F."[2] They further argue that title to the cargo follows the bills of lading, and once those were transferred to the collecting entities, they (Bozel) were no longer the owner of the cargo.
The Bank asserts that ownership must be determined under Louisiana law, and since Article 2 of the U.C.C. has not been adopted in this state, arguments with respect to shipping instructions, i.e. the designations "F.O.B." and "C.I.F.", lack merit. They further urge that only bills of lading which are "duly negotiated" transfer ownership of the goods, citing La.R.S. 10:7-502. They contend that the bills of lading may have been transferred to collecting agencies, but they were not "duly negotiated" as contemplated by section 502 since there was no value given prior to the attachment, citing La.R.S. 10:7-501(4).
We agree that Louisiana law governs the ownership of the cargo when it reached Chalmette. Article 2 of the U.C.C. has not been adopted in Louisiana, hence the courts must look to the Civil Code in determining the ownership of movables. However, with respect to movables shipped under a negotiable bill of lading, the pertinent codal articles must be interpreted and applied in conjunction with La.R.S. 10:7-501 et seq. In particular, we deem La.R.S. 10:7-602 to be controlling in the instant case.
The conservatory writ of attachment is a harsh remedy, and the courts have demanded strict adherence to its legal requisites before issuance. Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970). Deprivation of a person's property prior to notice and an opportunity to be heard necessitates extra caution by the judiciary against improper seizures. In determining the validity of an attachment, the courts will look at the facts existing at the time the writ was issued. Godfrey v. Project Square 376, 477 So.2d 920 (La.App. 4th Cir.1985), writ denied, 478 So.2d 905.
On May 14th, 1990 the trial court was presented a verified petition by the Bank that stated property owned by or in the possession[3] of Bozel was located in St. *44 Bernard Parish and that seizure of same was necessary to obtain jurisdiction over a non-resident defendant. Once Bozel moved to dissolve the attachment, it was incumbent upon the Bank to prove the grounds for its issuance. C.C.Pro. Art. 3506. The evidence clearly shows that the cargo was shipped pursuant to various bills of lading. Under those circumstances it was necessary for the Bank to prove that the requisites of La.R.S. 10:7-602 were satisfied at the time the writ was issued. They clearly did not.
La.R.S. 10:7-602 provides:
"Except where the document was originally issued upon delivery of the goods by a person who had no power to dispose of them, no lien attaches by virtue of any judicial process to goods in the possession of the depositary for which a negotiable document of title is outstanding unless the document be first surrendered to the depositary or its negotiation enjoined, and the depositary shall not be compelled to deliver the goods pursuant to process until the document is surrendered to him or impounded by the court. One who purchases the document for value without notice of the process of injunction takes free of the lien imposed by the process."
By adopting the above statute, Louisiana law makes it clear that irrespective of who may be deemed the owner of the property, if it is shipped pursuant to a negotiable bill of lading, no seizure can be effected unless the document is surrendered to the carrier (depositary) or impounded by a court (i.e. its negotiation enjoined).
The Bank argues, however, that R.S. 10:7-602 is inapplicable because its intent is to protect the bailee (depositary) from competing claims, rather than shielding a debtor's property from seizure, citing the U.C.C. comment to the statute. They further argue that, even if the statute is applicable, on May 18, 1990 and June 1, 1990, after the attachment issued, they instituted proceedings in Switzerland and Ohio, respectively, to enjoin negotiation of the documents.
The holder of a duly negotiated bill of lading acquires title to the document and title to the goods described therein. La.R.S. 10:7-502. It is clear that once a carrier has issued a negotiable bill of lading for goods being placed in commerce, the intent of the law is to protect those who subsequently become holders through "due negotiation." See, La.R.S. 10:7-501, -502(2), -503(2), and -503(3). Part and parcel of that intent is the protection afforded the depositary in relinquishing possession of the goods to the holder of the document. See, La.R.S. 10:7-601, -602 and -603. Thus, although goods in the possession of a depositary may have been seized, if the document's negotiation has not been enjoined or the document is not in its possession, R.S. 10:7-602 permits the depositary to surrender the goods to the duly negotiated holder. The law protects that holder from acquiring goods that are subject to a seizure. Any other conclusion would lead to the absurd result of requiring the holder, prior to his purchase of the bill of lading, to check every jurisdiction through which the goods passed to determine if it has been seized by judicial process. This would defeat the purpose of our commercial laws.
The record is clear that on May 14, 1990, the date of the seizure, the negotiable bills of lading were outstanding. They were not in the hands of the carrier and their negotiation had not been enjoined. As discussed supra, the validity of the attachment must be determined as of the date it was issued. The Bank cannot cure this defect by seeking to impound the bills of lading after it obtained the seizure. To hold otherwise would create an impossible contradiction in our commercial laws since the "seized" goods would still be subject to the legal effects of the unimpaired "due negotiation" of the corresponding bills of lading. The legal "capture" of the bills of lading is a prerequisite to the seizure of the goods.
As we noted at the beginning of this opinion, the only issue before us is the validity of the writ of attachment. A dissolution of the writ does not automatically *45 result in a dismissal of this lawsuit. The action proceeds as if no attachment had been issued. C.C.Pro. Art. 3506. However, it will be incumbent upon plaintiff to find some other legal basis for subjecting Bozel to the jurisdiction of the court below. Accordingly, we reverse the trial court and make Bozel's rule absolute. We order that the writ of attachment be dissolved.
WRIT GRANTED, REVERSED.
NOTES
[1] The forwarding bank is Bozel's bank in Brazil. The collecting banks are the recipients of the delivery documentation.
[2] The Picklands cargo was shipped "C.I.F." meaning "Cost Insurance and Freight." The Lakeside cargo was shipped "F.O.B. Rio de Janeiro" meaning "Free on Board in Rio de Janeiro." Under both situations, Bozel argues that responsibility for the cargo and its ownership pass to the purchasers once the cargo is loaded on the carrier.
[3] In order to subject the nonresident defendant to the court's jurisdiction by attachment the seized property must be owned by the defendant. C.C.Pro. Art. 9.